**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated**,** )<br>)<br>)<br>) | CIVIL ACTION NO.: 3:18-cv-00988 |
| )<br>Plaintiff, )<br>) | Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair Newbern |
| )<br>v. )<br>) | |
| )<br>ACADIA HEALTHCARE COMPANY, INC., )<br>*et al.*, )<br>) | |
| )<br>Defendants, ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

Dated: August 29, 2019

Steven A. Riley (BPR # 006258)
Milton S. McGee, III (BPR # 024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rwjplc.com
tmcgee@rwjplc.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice* forthcoming)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309
(404) 572-4600
jcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com

*Counsel for Defendants*

# I.    PLAINTIFFS' "SCHEME" LIABILITY ARGUMENT FAILS.

Defendants[1] established in their Motion that the Complaint should be dismissed because it fails to meet the PSLRA's "exacting pleading requirements."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Trying to downplay those requirements, Plaintiffs contend that they need plead only "representative samples" of a fraudulent scheme and that the Complaint adequately pleads "scheme liability."  Pls.' Mem. in Opp'n, Dkt. No. 47 ("Opposition" or "Opp."), at 5.  Plaintiffs are flat wrong.

As to Plaintiffs' contention that "representative samples" of a scheme are sufficient to survive a motion to dismiss, the section of *Grae v. Corr. Corp. of Am.*, No. 3:16-cv-2267, 2017 WL 6442145, at *12 (M.D. Tenn. Dec. 18, 2017) ("*CCA*"), from which they quote for this assertion is a discussion of Rule 9(b).  The PSLRA, however, "imposes even more stringent pleading requirements on plaintiffs than Rule 9(b) requires."  *In re SCB Computer Technology, Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 344 (W.D. Tenn. 2001).  Rule 9(b) does not provide the minimum pleading bar here—the PSLRA does.  And, as the *CCA* court goes on to hold, the "PSLRA mandates that, in order to survive a motion to dismiss, a plaintiff must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading'" and "'with respect to each act or omission alleged, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *CCA*, 2017 WL 6442145, at *13, *19.  Contrary to Plaintiffs' contention, representative samples of a scheme do not pass muster.

Plaintiffs are likewise incorrect that the Complaint should survive because it pleads

---

[1]  Capitalized terms shall have the same meaning as set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss, Dkt. No. 41 ("Motion" or "Mot.").

"scheme liability."[2] Opp. at 5. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158 (2008). In particular, when a plaintiff attempts to allege "scheme liability," plaintiff's reliance on the alleged scheme must be pled. *Gordon v. Elite Consulting Group LLC*, No. 09-CV-10772, 2009 WL 4042911, *5-6 (E.D. Mich. Nov. 19, 2009) (dismissing scheme liability allegations for failing to allege reliance). Plaintiffs' Complaint has a section devoted to allegations of reliance (¶¶ 230-235), and nowhere in that section is a single fact of reliance on a purported scheme alleged. Without any allegations of reliance on an alleged scheme, the Complaint does not plead scheme liability.[3]

## II. THE COMPLAINT FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT OR OMISSION.

Defendants established in the Motion that the Complaint should be dismissed for failure to allege an actionable misstatement or omission because (a) the PSLRA's Safe Harbor immunizes from liability the challenged forward-looking statements and any assumptions relating thereto (Mot. at 6-11); (b) the "quality of care" statements are inactionable puffery and not rendered misleading by omission because the facts allegedly omitted were actually disclosed (*id.* at 12-15); and (c) the statement of substantial compliance with regulations is an opinion for which the Complaint fails to plead a basis for liability (*id.* at 15-17). As set forth below, none of the

---

[2] Plaintiffs note that Defendants did not seek to dismiss a "scheme" in the Motion, but that is because the Complaint does not allege the element of reliance on a scheme and the paragraphs to which Plaintiffs cite are wholly conclusory. In any event, Defendants sought dismissal of all claims on scienter grounds, which would apply to a purported "scheme."

[3] Plaintiffs' citation to cases that the Securities & Exchange Commission ("SEC") brings is inapposite because "the Commission, unlike private parties, need not show reliance in its enforcement actions." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1104 (2019). Plaintiffs' citation to *Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011), is likewise deficient because nowhere in that case did the court analyze or hold that the complaint sufficiently alleged scheme liability.

arguments Plaintiffs raise in response merit denial of the Motion.

### A. The Safe Harbor Shields The Challenged Forward-Looking Statements.

The four points Plaintiffs raise in opposition to the plain application of the Safe Harbor to Defendants' challenged forward-looking statements are without merit.

*First*, Plaintiffs contend that some of the statements are of present fact, and, thus, not forward-looking. Opp. at 13. But the three paragraphs of the Complaint to which Plaintiffs cite are all instances where an analyst asked a question on an investor call about thoughts for the future and Defendants responded by providing an answer about the future and the ***assumptions*** on which that answer was based. Compl. ¶¶ 163, 164, 171. The Safe Harbor is clear that it protects not only forward-looking statements, but also "any statement of the assumptions underlying or relating to" such forward-looking statements. 15 U.S.C. § 78u-5(i)(1)(A)(D). Thus, in *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 677 (6th Cir. 2003), the Sixth Circuit held: "The phrase 'given the continuation of outstanding earnings growth and the successful implementation of our retail strategy,' although certainly implying some present circumstances, also is the basis for the later 'forward-looking statements,' thus qualifying as an 'assumption underlying' a 'forward-looking statement' found in 15 U.S.C. § 78u-5(i)(1)(D)." So too here. All of the statements identified in Exhibit 4 of the Motion as protected by the Safe Harbor are either forward-looking statements or assumptions underlying forward-looking statements.[4]

*Second*, Plaintiffs cite two cases where the defendants affirmatively stated that they were "on track" for a project or to meet guidance and contend those statements are not protected by the Safe Harbor. Opp. at 14. Plaintiffs' authority, however, is at odds with the Sixth Circuit, which

---

[4] Plaintiffs contend that Exhibit 4 is an improper end-run around the Court's page-limitation. Opp. at fn.3. But the local rules exclude exhibits from page limits and all of Defendants' legal arguments are contained within the Motion. *See* LR 7.01(2). Exhibit 4 simply lays out which of the arguments apply to which statements in the Complaint, for the convenience of the Court.

has held that "to the extent that the reference to the outlook 'remaining' positive implies some present circumstances, that is not enough to take [the] statement out of the safe harbor." *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir. 2009). Moreover, not one of the statements in the paragraphs of the Complaint to which Plaintiffs cite (¶¶ 168, 170-171, 173-175) contains an "on track" statement akin to those at issue in *IBEW Local 98 Pension Fund v. Best Buy Co.*, 958 F. Supp. 2d 1065, 1076 (D. Minn. 2013) or *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558, 2013 WL 5435832, *7 (D. Nev. Sept. 26, 2013). Rather, the statements Plaintiffs identify are statements reaffirming guidance. *See, e.g.*, Compl. ¶ 168 (statement "affirmed Acadia's previously established financial guidance"). As Judge Crenshaw has held, statements "reconfirming … guidance" are protected by the Safe Harbor and should be dismissed where accompanied by meaningful cautionary language. *Zwick Partners, LP v. Quorum Health Corp.*, Case No. 3:16-cv-02475, 2019 WL 1450546, *7-8 (M.D. Tenn. Mar. 29, 2019).

*Third*, in response to the requirement that forward-looking statements be dismissed if they are accompanied by meaningful cautionary language, Plaintiffs assert that a court cannot determine whether cautionary language is meaningful on a motion to dismiss. Opp. at fn.12. Nonsense. Plaintiffs' cited case pre-dates the *Miller* opinion, and, in *Miller*, the Sixth Circuit determined that cautionary language was meaningful as a matter of law on a motion to dismiss. *Miller*, 346 F.3d at 677-78. Moreover, the plain language of the Safe Harbor provides that "the court shall consider" on "any motion to dismiss … any cautionary statement accompanying the forward-looking statement." 15 U.S.C. § 78u-5(e); *see also Electrical Workers Pension Trust Fund of IBEW Local Union No. 58 v. Commscope, Inc.*, No. 5:10-cv-00062, 2013 WL 4014978 (W.D.N.C. Aug. 6, 2013) (rejecting plaintiff's argument that the court could not consider whether the cautionary language was meaningful on a motion to dismiss based on the plain language of the Safe Harbor).

4

The Court may properly consider whether the cautionary language is meaningful.

**Finally**, as to that relevant inquiry, Plaintiffs cite *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001), and contend Acadia's cautionary language was not meaningful. Opp. at 14. But the cautionary language in *Helwig* was "cursory and abstract," "stated only that [the company] could not predict the form, effect, or likelihood of any proposed legislation," and "offered investors no guidance about the consequences of health care reform upon the company's business." *Id.* at 559. Here, however, the cautionary language spans over 20 pages and is "substantive and tailored to the specific future projections, estimates, or opinions … which the plaintiffs challenge." *Id.*

Although Plaintiffs assert the cautionary language was not "tethered to the factors that ultimately caused the revenue miss and lowered guidance – *i.e.*, weakened patient admissions and increased agency labor costs" (Opp. at 14), *the cautionary language warned of those exact risks*. Specifically, Defendants warned that the following factors "could cause our actual results … to differ materially from [those] expressed or implied by such forward-looking statements: … the impact of our highly competitive industry on patient volumes … [and] the impact of competition for staffing on our labor costs and profitability." *See* Dkt. 41-2 at 33/38; *see also id.* at 9/38 (warning of "difficulties and costs of staffing and managing our new operations in the United Kingdom"); 11/38 ("Any decline in demand for our services in the United Kingdom from publicly funded entities or private payers or any failure by us to extend current agreements or enter into alternative agreements on comparable terms with such entities could have an adverse effect on our average daily census, which would have a corresponding negative impact on our business, results of operations, and financial condition"); 22/38 ("If our competitors are better able to attract patients, recruit and retain physicians and other healthcare professionals, expand services or obtain favorable managed care contracts at their facilities, we may experience a decline in patient volume

and our results of operations may be adversely affected"); 23/38 ("Competition for such employees is growing and could lead to increases in our personnel and recruiting costs, which would in turn adversely impact our operating costs and margins").

Because Defendants "disclosed the exact risk" Plaintiffs allege occurred—weakened patient admissions and increased agency labor costs—the cautionary language is undoubtedly meaningful and the forward-looking statements should be dismissed pursuant to the Safe Harbor. *Miller*, 346 F.3d at 678 (dismissing forward-looking statements where company disclosed the risk that occurred); *Zwick Partners*, 2019 WL 1450546, *8 (same).

### B.  The Challenged "Quality Care" Statements Are Not Actionable.

Defendants also established in the Motion that the quality of care statements should be dismissed because they are inactionable corporate puffery and the allegedly omitted information was actually disclosed.  Mot. at 12-15.  Plaintiffs' arguments in opposition are unavailing.

In response to the puffery argument, Plaintiffs contend that the statements are pegged to concrete standards and, thus, actionable.  But the cases to which Plaintiffs cite make clear that Defendants' statement itself must be pegged to a standard to be actionable.  In *CCA*, the company "did peg its claims to something concrete: its relationships with specific, identifiable government clients, who themselves had express, documented expectations that they communicated to [the company] in their contracts, Notices of Concern, and other review findings."  *CCA*, 2017 WL 6442145, at 14.  In *Garden City*, the statements indicated that the care provided was "objectively better and of higher quality than care provided by PSI's competitors."  *Garden City*, 2011 WL 1335803, *45.  And, in *City of Monroe*, the one statement held actionable indicated that "objective data clearly reinforces our belief that these are high-quality, safe tires."  *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 672 (6th Cir. 2005).

The statements challenged here, however, are not pegged to any standard.  Rather,

Defendants made general, quality statements such as referring to a "growing demand for high quality inpatient behavioral healthcare" (Compl. ¶ 115) and "we want to deliver good, quality care" (*id.* ¶ 117). These are strikingly similar to the following statements at issue in *City of Monroe* that the Sixth Circuit held were inactionable puffery: company sold "the best tires in the world," had "global consistent quality," "high regard among automakers for our strengths in product quality," and "premium quality" tires, among others. *Id.* at 670. As the Sixth Circuit held, "such statements describing a product in terms of 'quality' or 'best' or benefitting from 'aggressive marketing' are too squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision." *Id.* at 671.

In response to Defendants' argument that the quality of care statements are not actionable because the allegedly omitted information was actually disclosed, Plaintiffs raise three points. First, Plaintiffs assert that the inquiry is fact specific and not appropriate for a motion to dismiss. Not so. If a Defendants' public filings disclose the alleged omitted information, the complaint should be dismissed. *See Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 210-11 (S.D.N.Y. 2012).[5]

Plaintiffs next assert that the disclosures on patient incidents were insufficient because they "merely warned of the ***potentiality*** of patient incidents." Opp. at 10 (emphasis added). Plaintiffs flatly ignore Defendants' disclosures. Defendants disclosed that patient incidents actually occur, not just the potentiality of them: "Because the patients we treat suffer from severe mental health and chemical dependency disorders, ***patient incidents, including deaths, assaults and elopements, occur from time to time***." Dkt. No. 41-3 at 9/32 (emphasis added).

Finally, Plaintiffs assert that disclosure of staffing costs does not rebut Plaintiffs'

---

[5] The case Plaintiffs cite was an instance where the court was asked to look at other information available in the public domain and not defendants' own disclosures. *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2018 WL 2933406, *10 (M.D. Ten. Apr. 19, 2018).

allegations of purported slashed costs because "it is no surprise that the total number of employees and SWB expense grew over the course of the Class Period" in light of facility acquisitions. Opp. at fn.6. Again, Plaintiffs flatly ignore Defendants' disclosures. Defendants specifically disclosed the ***same-facility*** SWB costs. *See* Mot. at 13. Same-facility analysis does not take acquisitions into account, so it shows Acadia's SWB/staffing costs on a same-facility basis, year over year. That analysis, as set forth in the Motion, demonstrates that staffing costs were increased year-over-year without considering acquisitions. *Id.* Plaintiffs have no response to the unassailable fact that same-facility SWB cost figures were disclosed. No slashing of staffing costs occurred, and Plaintiffs' conclusory allegations to the contrary should be rejected.

## C. The Substantial Regulatory Compliance Opinion Is Not Actionable.

Plaintiffs do not dispute that the statement "management believes we are in substantial compliance with applicable laws and regulations" is an opinion statement subject to the standard set forth in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015). Opp. at 10. Plaintiffs contend, however, that they have met the standard because the Complaint alleges omitted information showing Defendants lacked the basis for making the statement. *Id.* Plaintiffs are wrong.

The allegedly omitted information that Plaintiffs assert contradicts the opinion statement of substantial compliance consists of inspection reports by the Centers for Medicare and Medicaid Services ("CMS"). Opp. at 11 (citing Compl. ¶¶ 185-186). But Plaintiffs fail to recognize that "substantial compliance" is a term of art that CMS uses. As CMS has explained:

> For acute, critical access or psychiatric hospitals the statutory and regulatory requirements are that they be in "substantial" compliance with each Condition of Participation (CoP). …If an acute or critical access hospital is not in substantial compliance, the only enforcement remedy, if the facility fails to make timely correction, is termination of its participation in Medicare and Medicaid. …[A] condition-level deficiency means that for that particular CoP the acute or critical

> access hospital is not in substantial compliance. ***There can be noncompliance with a CoP regulatory standard that does not rise to the level of substantial noncompliance with the condition***.

See *A Q&A with CMS: Getting up to speed on inspection reports*, available at http://www.hospitalinspections.org/qa-with-cms/ (last visited August 20, 2019) (emphasis added).

In other words, a facility can still be in "substantial compliance" as a whole even though a CMS inspection report indicates deficiencies. Notably, the paragraphs to which Plaintiffs cite nowhere allege that a facility was in substantial ***non***compliance or that the enforcement remedy of termination was implemented. Compl. ¶¶ 185-187. And, considering that Acadia operated more than 570 facilities, even if some of those facilities were in substantial noncompliance, it would not contradict Defendants' opinion that the Company as a whole was in substantial compliance.[6] As one court held: "Evaluated in context, the statements here were not misleading because a reasonable investor would not understand the company's high-level, general statements that it was operating in substantial compliance with regulatory requirements as implicitly assuring absolute compliance, even with the recordkeeping regulations that the violation notices addressed." *In re Plains All American Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 909 (S.D. Tex. 2017) (dismissing substantial compliance opinion statement). *Omnicare* accordingly has not been satisfied and the statement of opinion of substantial compliance should be dismissed.

## III.   THE COMPLAINT FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER.

Even if the Complaint did allege an actionable misstatement or omission, which it does not, it fails to allege a strong inference of scienter that is cogent and at least as compelling as the

---

[6] To be clear, there is no duty on Acadia to disclose every single CMS inspection. As the Second Circuit held: "IMCERA is a world-wide company engaged in heavily regulated businesses that produce over a thousand products in over thirty countries. It would be unduly burdensome and impractical to publicly disseminate the results of every inspection of every plant." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52-53 (2d Cir. 1995).

non-fraudulent inference.  Dismissal is warranted on this ground as well.

### A.      Stock Sales.

In an attempt to rebut all the reasons the Individual Defendants' stock sales are not indicative of scienter (Mot. at 17-20), Plaintiffs focus heavily on the amount of the stock sales (Opp. at 17-20), but "large numbers do not necessarily create a strong inference of fraud."  *Osher v. JNI Corp.*, 302 F. Supp. 2d 1145, 1165 (S.D. Cal. 2003) (no scienter where defendant sold 98% of holdings).  Aside from the amount, Plaintiffs have no response to the holistic picture presented that the stock sales do not give rise to a strong inference of scienter.

In particular, Plaintiffs offer no response to the well-accepted authority that an "exceedingly long putative class period" (here, 54 months) "weakens any inference of scienter that could be drawn from the timing of defendants' trades.  Indeed, the lengthy period strengthens a competing inference that the plaintiffs filed their complaint simply to embark on a fishing expedition with the hope of catching a valid claim."  *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007) (stock sales over 46 month class period did not allege scienter).

Plaintiffs likewise have no meaningful response to the fact that a majority of the sales were part of public offerings.  Mot. at 19.  Plaintiffs try to distance this case from *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363 (N.D. Ga. 2004) with the notion that the court rejected the stock sales for reasons other than that they occurred in connection with an offering.  Opp. at 21. Not so.  The *AFC* court held: "Although the amount of stock sold during the Class Period is substantial, the timing of these sales was quite ordinary.  It is not uncommon or otherwise suspicious to sell stock in association with a public offering; indeed, the sale of stock is often the point of the offering."  *AFC*, 348 F. Supp. 3d at 1373.

The stock sales that occurred over an alleged 54-month class period in connection with multiple secondary offerings give rise only to the innocent inference that the stock sales were

ordinary, executive compensation to be expected of a company that did as well as Acadia did.

### B. Defendants' Monitoring of Quality Control Metrics.

Defendants established in the Motion that the monitoring of quality control metrics simply does not give rise to a strong inference of scienter because the Complaint does not allege what facts Defendants purportedly learned from this monitoring that made the public statements misleading, particularly in light of the fact that, as discussed above, Defendants expressly and unequivocally disclosed that their facilities experience serious patient incidents, including deaths. Mot. at 21. Plaintiffs' Opposition does not fill that gap. Instead, Plaintiffs resort to inflammatory terms like "state of mayhem" in an attempt to distract from their obvious pleading failure. Opp. at 15-17. The fact remains, however, that "[p]laintiffs do not allege any discrepancy between the information known to company management and that presented to the public." *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724, 740 (W.D. Ky. 2004) (dismissing complaint for failure to allege scienter). The Complaint should be dismissed.

### C. The Incentive Compensation System.

Defendants established in the Motion that an incentive compensation system tied to financial metrics was not to the exclusion of quality care because poor patient care leads to lower revenues and income. Mot. at 22. Plaintiffs have zero response to this argument. Opp. at 21-22. Thus, the only inference from the compensation system is that it did reward quality care.

### D. Corporate Turnover.

Defendants established in the Motion that the departures of Messrs. Jacobs and Turner do not give rise to a strong inference of scienter because the Complaint's description of the departures as a "bloodletting" did not mask the failure to allege actual facts that the departures were anything other than ordinary course. Mot. at 22-23. In response, Plaintiffs state "courts in the Sixth Circuit often turn to suspicious resignations to support a finding of scienter." Opp. at fn.15. The two cited

cases, however, support dismissal of the Complaint. The court in *Fla. Carpenters Regional Council Pension Plan v. Eaton*, 964 F. Supp. 2d 875, 889 (N.D. Ohio 2013), dismissed the complaint and unequivocally held that "Eaton's terminations of Leo and O'Flaherty do not support a strong inference of scienter." The court in *Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1014 (S.D. Ohio 2004), likewise dismissed the complaint and held that "while the CAC states that van der Walde resigned …, Plaintiffs offer no explanation for why his resignation almost a month after the public disclosure should be viewed with unusual suspicion." So too here. The Complaint relies on the mere fact that the departures occurred a month after the alleged class period, but fails to allege any facts as to why that timing should be viewed with suspicion.

### E.    The Sustainability Report.

Seeking to distract from the fact that Defendants actually did conduct a sustainability report, Plaintiffs argue that Defendants' public recommendation against the report is obstructive like the conduct at issue in *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269 (S.D.N.Y. 2008). *Katz* involved defendants obstructing an internal investigation of fraud, not a publicly stated position. And, in any event, Defendants ultimately did the report, demonstrating they had nothing to hide and that the more compelling inference is the non-fraudulent one.

### F.    Reporting Policy.

Plaintiffs also argue that the Complaint alleges a strong inference of scienter because there was a policy against reporting patient incidents. Opp. at 23-24. The two cited paragraphs of the Complaint (¶¶ 48, 64) do not contain any link to any executive at Acadia, and, thus, provide no help in alleging a strong inference of scienter. *Omnicare*, 583 F.3d at 946.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Motion, Defendants respectfully request that their Motion be granted and the Complaint dismissed.

This 29th day of August, 2019.

/s/ Steven A. Riley

Steven A. Riley (BPR # 006258)
Milton S. McGee, III (BPR # 024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rwjplc.com
tmcgee@rwjplc.com


Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice* forthcoming)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309
(404) 572-4600
jcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of August, 2019, I electronically filed **Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiffs' Consolidated Complaint** with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Christopher M. Wood
Jerry E. Martin
ROBBINS GELLER RUDMAN &
DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
cwood@rgrdlaw.com
jmartin@barrettjohnston.com

Danielle S. Myers
David C. Walton
Darryl J. Alvarado
ROBBINS GELLER RUDMAN &
DOWD LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
danim@rgrdlaw.com
davew@csgrr.com
dalvarado@rgrdlaw.com

Thomas C. Michaud
VANOVERBEKE, MICHAUD & TIMMONY, P.C.
79 Alfred Street
Detroit, MI 48201
(313) 578-1200
tmichaud@vmtlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
jmartin@barrettjohnston.com

14

Matthew M. Guiney
Patrick Donovan
Regina M. Calcaterra
Thomas H. Burt
WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600
guiney@whafh.com
donovan@whafh.com
calcaterra@whafh.com
burt@whafh.com

Paul Kent Bramlett
BRAMLETT LAW OFFICES
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: pknashlaw@aol.com

*/s/ Steven A. Riley*

15