# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similar, | ) ) ) ) | |
| Plaintiff, | ) ) | NO. 3:18-cv-00988 |
| v. | ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE NEWBERN |
| ACADIA HEALTHCARE COMPANY, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 40). Plaintiffs filed a Response in Opposition (Doc. No. 47), and Defendants filed a Reply (Doc. No. 50). For the reasons set forth more fully below, Defendants' Motion will be **DENIED**.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Lead Plaintiffs, New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund and the Chicago Laborers' Pension Fund, filed this securities fraud class action on behalf of purchasers of Acadia Healthcare Company, Inc. ("Acadia") securities between April 30, 2014 and November 15, 2018 (the proposed class period), against Acadia, Joey A. Jacobs, former Chairman of Acadia's Board of Directors and its Chief Executive Officer; Brent Turner, Acadia's President; and David Duckworth, Acadia's Chief Financial Officer, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a) and Securities and Exchange Commission (SEC) Rule 10b–5, 17 CFR § 240.10b–5. (Doc. No. 39). On May 31, 2019, Defendants filed the pending motion to dismiss pursuant Rule 12(b)(6) for failure to state claim. (Doc. No. 40).

Acadia is a for-profit healthcare company that operates inpatient psychiatric facilities, residential treatment centers, and other facilities providing outpatient behavioral healthcare services in the United States, the United Kingdom ("U.K.") and Puerto Rico. (Doc. No. 39 ¶¶ 2, 28). The Consolidated Complaint ("Complaint"), filed on April 1, 2019, alleges that, throughout and before the Class Period, Defendants engaged in a scheme to defraud and mislead investors concerning patient care, staffing levels, and legal compliance issues, as well as Acadia's U.K. operations.

Plaintiffs allege that Defendants falsely represented that Acadia provided high-quality services, adequately staffed its facilities, and complied with applicable laws and regulations. (Doc. No. 39 ¶¶ 111-157). It was quality care, Defendants repeatedly emphasized, that drove new patients to Acadia facilities, created the demand necessary to grow its existing facilities, and was key to improving the performance and operations at the facilities Acadia acquired to fuel its growth. (Doc. No. 39 ¶¶ 42-45, 112-113). In reality, Acadia achieved growth by inadequately staffing facilities and cutting costs to extract higher profits at the expense of patient care and safety, and ran facilities rife with violence, sexual assault, and counter-therapeutic policies and practices. (Doc. No. 39 ¶¶ 47-60, 61-84, 185-186).

Additionally, Plaintiffs allege Defendants falsely represented that Acadia's $2.2 billion acquisition of The Priory Group, the U.K.'s largest chain of behavioral health centers, would contribute to positive financial growth. (Doc. No. 39 ¶¶ 91-108). Defendants repeatedly assured investors throughout 2017 that Acadia was on track to meet its financial targets and that the Company would experience margin improvement in the U.K. when, in fact, Acadia was not on track to meets its U.K. financial targets because of weakened patient census and increased labor costs that Defendants concealed. (Doc. No. 39 ¶¶ 158-178, 180-183).

Defendants' fraud was revealed through a series of partial disclosures. The first occurred on October 24, 2017, when Acadia revealed that deteriorating performance in the U.K. had caused the Company to miss its 3Q17 revenue and earnings targets and substantially reduce its guidance for the remainder of the year, causing Acadia's stock price to drop 30%. (Doc. No. 39 ¶¶ 8, 180-81, 183-184). The second occurred on October 11, 2018, when Aurelius Value published a report and released a video documenting systemic patient abuse and neglect at dozens of Acadia facilities caused primarily by understaffing. (Doc. No. 39 ¶¶ 9, 185). The report included an analysis of Centers for Medicare and Medicaid Services inspection reports from 2013 to 2018 for 31 of the 40 acute inpatient U.S. hospitals listed on Acadia's website. (Doc. No. 39 ¶ 10). The analysis found that federal inspectors uncovered staffing deficiencies at over 90% of these 31 Acadia hospitals, including repeated violations for insufficient nurses or qualified practitioners on hand. (Doc. No. 39 ¶ 10). Of these 28 hospitals with staffing deficiencies, 89% of those facilities were also cited by inspectors for patient care and safety deficiencies. (Doc. No. 39 ¶ 10). Following this news, Acadia's stock price declined by more than 11%. (Doc. No. 39 ¶¶ 10, 189).

Finally, on November 16, 2018, *Seeking Alpha* published an article entitled, "Acadia Healthcare: Very Scary Findings From A 14-Month Investigation," which revealed that the Company's rapid growth, as well as its revenue and margin increases, were attributed to cost-cutting and "reducing the quality of care." (Doc. No. 39 ¶¶ 11, 190). The article highlighted severe problems at seven of Acadia's facilities (facilities that were also featured in the October 2018 Aurelius Value report) and reported that, "due to the number of suicides at some of their facilities, Acadia's ability to accept certain patients has been restricted by state-level governments." (Doc. No. 39 ¶¶ 11, 190). On this news, Acadia's stock price declined by 26%. (Doc. No. 39 ¶¶ 11, 192).

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6), permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

### B. Securities Fraud Pleading Standards

Plaintiffs' securities-fraud claims implicate the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018). Accordingly, their complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citations and internal quotation marks omitted).

The Private Securities Litigation Reform Act (PSLRA) imposes two additional pleading requirements. *See id*. (citing 15 U.S.C. § 78u-4(b)(1), (b)(2)). "Plaintiffs' complaint must specify

4

each statement alleged to have been misleading along with the reason or reasons why the statement is misleading and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (citations and internal quotation marks omitted).

### III. ANALYSIS

To state a securities fraud claim under Section 10(b) of the Exchange Act and SEC Rule 10b–5(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014) (quoting *Matrixx*, 563 U.S. at 37–38) (internal quotation marks omitted). Even with the heightened pleading standards applicable to a securities fraud case under Section 10(b), for purposes of ruling on a motion to dismiss for failure to state a claim, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in plaintiff's favor. *See Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 908 n. 6 (M.D. Tenn. 2019). Through their pending motion to dismiss, Defendants challenge the sufficiency of the Complaint's allegations as to the first and second elements.[1]

**A. Element One: Material Misrepresentation or Omission**

"Successfully pleading an actionable material misrepresentation or omission requires a plaintiff to allege facts demonstrating two things: (1) that a defendant made a statement or omission that was false or misleading; and (2) that this statement or omission concerned a material fact." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 470 (6th Cir. 2014).

---

[1] In their Reply, Defendants raised new arguments challenging the sufficiency of Plaintiffs' scheme liability allegations. (*See* Doc. No. 50 at 2-3). Defendants did not raise or articulate any arguments specific to the scheme liability allegations in their opening brief, (*see* Doc. No. 41), and the Court declines to consider the arguments raised for the first time in their Reply in ruling on the pending motion to dismiss.

5

Defendants argue that the Complaint fails to allege an actionable misstatement or omission because (1) the challenged forward-looking statements fall within the PSLRA's Safe Harbor, (2) the challenged "quality care" statements were not misleading or material, and (3) the challenged statement regarding substantial compliance with laws and regulations was not misleading.

   1.   Safe Harbor

"The PSLRA contains a safe-harbor provision for a forward-looking statement whereby a defendant is liable for such statements only if they were material; if the defendant had actual knowledge that the statements were false or misleading; and if the defendant did not identify the statements as forward-looking or insulate them with meaningful cautionary language." *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 910 (M.D. Tenn. 2019) (citations and internal quotations omitted). "[F]or 'forward-looking statements' that are accompanied by meaningful cautionary language, the ... the safe harbor provided for in the PSLRA makes the state of mind irrelevant." *Id.* (quoting *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 672 (6th Cir. 2003) (citing 15 U.S.C. § 78u–5(c)(1)(A)). "A company that chooses to speak, therefore, is protected against failed projections provided it identifies 'important factors that could cause actual results to differ materially from those in the forward-looking statements.'" *Id.* at 911 (quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 551 (6th Cir. 2001) (quoting 15 U.S.C. § 78u–5(c)(1)(A)(i)). Through their pending motion, Defendants argue that the challenged statements fall within the safe-harbor because they are forward-looking, were identified as such, and were accompanied by sufficient cautionary language. (Doc. No. 41 at 12-16).

Under the PSLRA, a "forward-looking statement" is defined as: "(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items; (B) a

statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer; (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission; [and] (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C)[.]" 15 U.S.C. § 78u–5(i)(1).

The challenged statements at issue speak of earnings guidance, plans and objectives of management for future operations, and statements of future economic performance or are statements of assumptions underlying or relating to plans for future operations or future projections. (*See* Doc. No. 41 at 12-16 and Doc. No. 41-1 (citing Doc. No. 39 ¶¶ 121, 159, 160, 162, 163, 164, 165, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177)). The Court finds that these statements fall squarely within the PSLRA's definition of forward-looking statements. *See* 15 U.S.C. § 78u–5(i)(1); *see, e.g.*, *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-CV-02475, 2019 WL 1450546, at *7 (M.D. Tenn. Mar. 29, 2019) (citing *Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 243 (6th Cir. 2015) (concluding that Tempur-Pedic's projection of between $1.60 and $1.65 billion in net sales and between $3.80 and $3.95 in earnings per diluted share were squarely within the PSLRA's definition of forward-looking statements); *Miller*, 346 F.3d at 677 (holding that statements speaking of earnings estimates and enhancement projections or objectives are "classically forward-looking")).

Defendants assert that the cautionary language in Acadia's 2015 Form 10-K, filed on February 25, 2016, was "undoubtedly meaningful" because it disclosed the exact risk Plaintiffs allege occurred – weakened patient admissions and increased agency labor costs. (Doc. No. 50 at 7). However, that cautionary language is only meaningful to the extent that such increases in labor

7

costs and declines in patient volume had not already occurred at the time the respective challenged forward-looking statements accompanying the cautionary language were made.[2] As previously recognized by this Court, "[i]f a company were to warn of the potential deterioration of one line of business, when in fact it was established that that line of business had already deteriorated, then ... its cautionary language would be inadequate to meet the safe harbor standard. By analogy, the safe harbor would not protect from liability a person 'who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.'" *Weiner*, 365 F. Supp. 3d at 911 (quoting *In re Harmon Int'l Indus. Inc. Sec. Litig.*, 791 F.3d 90, 102-03 (D.C. Cir. 2015)).

In the present case, the meaningfulness of the cautionary statements in Acadia's Form 10-K cannot be determined without a determination of the facts – i.e. whether Acadia's U.K. Facilities were already facing increased labor costs and declines in patient volume at the time the respective challenged forward-looking statements were made. *See, e.g.*, *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2019 WL 6168254, at *16 (M.D. Tenn. Nov. 19, 2019). Accordingly, the Court is unable to determine whether the challenged forward-looking statements were accompanied by sufficient cautionary statements in ruling on the pending motion to dismiss.

2. Falsity

"The PSLRA mandates that," in order to survive a motion to dismiss, a plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 569 (6th Cir. 2004) (quoting 15 U.S.C. § 78u–4(b)(1)); *see, e.g., In re Omnicare*, 769 F.3d at 480 n. 6 ("KBC does not

---

[2] Defendants have not identified specific cautionary statements that accompanied the challenged forward-looking statements in paragraphs 121, 165, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177 of the Complaint.

need to recite in the Complaint the specific results of the audits, including the percentage of Omnicare claims audited or the non-compliance rate. Under the PSLRA, it is enough to identify the misrepresentations (the Form 10–K statements) and explain how they are false or misleading (they conflict with the results of the audits, which show billing irregularities).").

"[A] company has a duty to disclose hard information but not soft information unless other criteria are met." *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 913 (M.D. Tenn. 2019) (quoting *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 572 (6th Cir. 2008)). "Hard information is typically historical information or other factual information that is objectively verifiable. Such information is to be contrasted with 'soft' information, which includes predications and matters of opinion." *Id.* (quoting *Zaluski*, 527 F.3d at 572). With regard to soft information, "a defendant may choose silence or speech based on the then-known factual basis, but it cannot choose half-truths." *Id.* (quoting *In re Ford*, 381 F.3d at 569); *see also City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 675 (6th Cir. 2005) ("the protections for soft information end where speech begins.") (internal citation omitted). "Thus, once a company has chosen to speak on an issue – even an issue it had no independent obligation to address – it cannot omit material facts related to that issue so as to make its disclosure misleading." *Weiner*, 365 F. Supp. 3d at 913 (citation and internal quotations omitted).

### i. *"Quality Care" Statements*

According to Defendants, the Complaint alleges that Defendants' statements regarding the quality of Acadia's care services and adequacy of staffing at Acadia's facilities were misleading because Defendants failed to disclose that Acadia was understaffing facilities and had patient incidents. (Doc. No. 41 at 18). Defendants assert that these challenged quality care statements, (*see* Doc. No. 41-4 (citing Doc. No. 39 ¶¶ 112, 113, 115-120, 122-126, 131, 132, 134-140, 144-

9

Case 3:18-cv-00988   Document 54   Filed 01/20/21   Page 9 of 16 PageID #: 1609

146, 160, 166)), are not actionable because Acadia disclosed its employee numbers, staffing costs, and that it had patient incidents. (Doc. No. 41 at 18-19; Doc. No. 50 at 3, 8).

However, the Complaint does not allege that Defendants' statements about Acadia's facilities being adequately staffed and providing "high-quality services" were misleading because Defendants failed to disclose its employee numbers, staffing costs, and that it had patient incidents. Rather, it alleges these statements were misleading because Acadia did not provide high quality care services and achieved growth by inadequately staffing facilities and slashing costs, which led to widespread violence, sexual assault, and counter-therapeutic policies and practices in its facilities. (Doc. No. 39 ¶¶ 129, 148).

Additionally, Plaintiffs note that the total employee figures Acadia disclosed during the Class Period say nothing about the number of nurses, psychiatrists or medical technicians at each facility, the number of patients at each facility, staff-to-patient ratios or any other metric that would enable investors to determine whether Acadia's facilities were appropriately staffed. (Doc. No. 47 at 16). Plaintiffs assert that this information could not be reached from the reported total employee number given Defendants repeated statements that much of the necessary facility staff were not employed by Acadia and worked in their facilities as independent contractors or medical staff members. (Doc. No. 47 at 16 n. 5). Plaintiffs also assert that Defendants' statements about having some patient incidents did not come close to revealing or disclosing the systemic staffing and widespread past and ongoing patient issues alleged. (Doc. No. 47 at 17). The Court finds that the Complaint sufficiently alleges that "quality care" statements were false or misleading.

*ii. Statements about substantial regulatory compliance*

The Complaint alleges that Defendants' statement in its Forms 10-K that "[m]anagement believes we are in substantial compliance with all applicable laws and regulations" was misleading

because "Acadia's facilities were in regular violation of CMS and state regulations regarding patient-to-staff ratios and other measures of patient safety or care." (Doc. No. 39 ¶ 149; *see also id*. ¶¶ 157, 185-186). Defendants argue that their alleged knowledge of regulatory violations at some of Acadia's facilities does not render their statement about Acadia's substantial regulatory compliance false or misleading because a reasonable investor would not infer from their statement that Acadia fully complied with every regulation or requirement. (Doc. No. 41 at 21 (citing *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 635 (S.D. Texas 2018)).

In Response, Plaintiffs point out that the Complaint alleges that these violations did not just occur at some of Acadia's facilities but were chronic and pervasive throughout Acadia's acute inpatient facilities, which accounted for 40%-43% of Acadia's U.S. revenue throughout the Class Period. (Doc. No. 47 at 18 (citing Doc. No. 39 ¶¶ 185-186)). Additionally, Plaintiffs argue these alleged violations conflict with what reasonable investors expected based on Defendants' substantial compliance statements in Acadia's SEC filings. *Id.* (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) ("Investors do not, and are right not to, expect opinions contained in those statements to reflect baseless, off-the-cuff judgments, of the kind that an individual might communicate in daily life.")). The Court finds that the Complaint sufficiently alleges that Defendants' statement about substantial regulatory compliance was false or misleading.[3]

---

[3] Defendants also argue that this statement about substantial regulatory compliance is not actionable because the Complaint does not allege facts demonstrating that Defendants had actual knowledge of its falsity. (Doc. No. 41 at 8, 20-22 (citing *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 471 (6th Cir. 2014) (the Complaint must "allege particular facts demonstrating that defendants had actual knowledge that their statements concerning soft information were false or misleading at the time that they were made.")). Defendants are correct that "[w]hen an alleged misrepresentation concerns 'soft information,' which 'includes predictions and matters of opinion,' a plaintiff must additionally plead facts showing that the statement was 'made with knowledge of its falsity.'" *In re Omnicare,* 769 F.3d at 470 (internal citations omitted). However, the Sixth Circuit has adopted the approach of analyzing this component as part of the scienter analysis. *See id.* at 470-71 (noting that "whether someone made a statement with the knowledge

11

3.  Materiality

The Supreme Court has endorsed "a fact-intensive test" of materiality in securities fraud cases that is dependent "on the significance the reasonable investor would place on the withheld or misrepresented information." *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 555 (6th Cir. 2001) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988))). Accordingly, "the materiality inquiry requires the court to place itself in the shoes of a reasonable investor deciding whether to buy, sell, or retain the company's stock." *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2017 WL 6442145, at *16 (M.D. Tenn. Dec. 18, 2017); *see, e.g., Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 468 (6th Cir. 2011) ("Misrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available.") (citation omitted). Additionally, context must inform determinations of materiality. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 472, 478 (6th Cir. 2014) ("as we have said and the Supreme Court has made clear, context matters when analyzing materiality") (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011)). The question of whether alleged misrepresentations or omissions are material is a mixed question of law and fact. *See Helwig*, 251 F.3d at 563 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)); *see id.* (noting that "[c]ourts generally reserve such questions for the trier of fact.").

In the present case, Defendants appear to contend that their statements regarding the quality of the care services provided at Acadia facilities are inactionable puffery because the word "quality" is too vague to communicate anything important. (*See* Doc. No. 41 at 17 ("Indeed, as the Sixth Circuit held, 'statements describing a product in terms of "quality" or "best" . . . are too

---

that it was false is, at bottom, a question of someone's state of mind—the general subject of a scienter inquiry.").

squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision.'") (quoting *Bridgestone*, 399 F.3d at 671); *see also* Doc. No. 50 at 8).

Defendants are correct that "[a] company's general boasts of quality are typically insufficient to establish liability under Section 10(b), because such statements usually 'lack[ ] a standard against which a reasonable investor could expect them to be pegged.'" *Grae*, 2017 WL 6442145, at *14 (quoting *Bridgestone*, 399 F.3d at 671). However, "[t]he Sixth Circuit has made clear that even superficially broad statements of corporate self-praise must be evaluated in context to determine if they convey more than just a generalized optimism." *Id*. (citing *Bridgestone*, 399 F.3d at 671-72). "The key is whether the proposition at issue can be proven or disproven using standard tools of evidence. Thus, … vague statements not subject to verification by proof are generally deemed non-actionable puffery. But 'opinion or puffery ... in particular contexts when it is both factual and material ... may be actionable.'" *Bridgestone*, 399 F.3d at 674 (quoting *Longman v. Food Lion, Inc.*, 197 F.3d 675, 683 (4th Cir. 1999)) (emphasis omitted). As Plaintiffs point out, Defendants' statements regarding staffing levels and the quality of care at Acadia's facilities are both capable of objective measurement and verification using standard tools of evidence. (*See* Doc. No. 47 at 15 (citing Doc. No. 39 ¶¶ 52-53, 187, 217)).

Viewing the Complaint in the light most favorable to Plaintiffs, the Court finds that a reasonable juror could conclude that Defendants' statements regarding staffing levels and the quality of care at Acadia's facilities were material misrepresentations.

## B. Element Two: Scienter

"To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or

13

defraud.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)). "In the securities-fraud context, scienter includes a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (internal quotations and citation omitted). "Recklessness is defined as 'highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.'" *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004)). "Recklessness is not negligence, but more 'akin to conscious disregard.'" *Id.* (quoting *PR Diamonds, Inc.*, 364 F.3d at 681).

"Under the PSLRA, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Matrixx*, 563 U.S. at 48 (quoting 15 U.S.C.A. § 78u–4(b)(2)(A)).[4] "This standard requires courts to take into account 'plausible opposing inferences.'" *Id.* (quoting *Tellabs*, 551 U.S. at 323). "A complaint adequately

---

[4] The Sixth Circuit has enumerated a "non-exhaustive list of factors that do not necessarily establish scienter, but are 'usually relevant' to its analysis," which includes allegations of:

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Frank*, 646 F.3d at 959 n. 2 (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001)).

14

pleads scienter under the PSLRA 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 551 U.S. at 324). The inquiry "[is] not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.*, 551 U.S. at 322-23. ("The strength of an inference cannot be decided in a vacuum."). Rather, *"*[i]n making this determination, the court must review 'all the allegations holistically.'" *Matrixx*, 563 U.S. at 48 (quoting *Tellabs*, 551 U.S. at 326).

Through their motion to dismiss, Defendants appear to argue that an inference of their innocence is stronger than the competing inference of scienter. (*See* Doc. No. 41 at 22-30).[5] In Response, Plaintiffs argue that a compelling inference of actual knowledge or recklessness disregard of the alleged scheme and the falsity of Defendants' misrepresentations can be derived from the allegations that: Defendants had intimate knowledge of patient admissions, staffing levels, and quality control issues and monitored those metrics on a daily basis; before the misconduct was revealed the Individual Defendants and one of Acadia's founders unloaded more than $600 million in Acadia stock while its price was inflated by fraud; Defendants installed compensation structures designed solely to reward short-term profit at the expense of patient care; and shortly after Defendants' fraud was revealed, Acadia's CEO and President were abruptly fired or resigned with no notice under highly unusual circumstances. (Doc. No. 47 at 22-31).

When the factual allegations are considered collectively, the Court finds that there is an inference that Defendants acted with actual knowledge or reckless disregard for the misleading

---

[5] Notwithstanding the Supreme Court's instruction that "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically," *Tellabs*, 551 U.S. at 326, Defendants challenge the sufficiency of Plaintiffs' scienter allegations by advancing arguments against factual allegations in isolation. (*See* Doc. No. 41 at 22-30).

15

nature of their statements that is at least as compelling as the innocence inference advanced by Defendants. *See, e.g.*, *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2017 WL 6442145, at *20-21 (M.D. Tenn. Dec. 18, 2017).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 40) will be denied.[6] An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Because Defendants seek dismissal of the Section 20(a) claims for secondary liability against the individual Defendants solely on the grounds that the Complaint fails to adequately allege a Section 10(b) violation, (*see* Doc. No. 41 at 30), the Section 20(a) claims likewise will not be dismissed.

16