# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated**,** | ) ) ) ) | CIVIL ACTION NO.: 3:18-cv-00988 |
| Plaintiff, | ) ) | Judge William L. Campbell, Jr. Magistrate Judge Alistair Newbern |
| v. | ) ) ) | |
| ACADIA HEALTHCARE COMPANY, INC., *et al.*, | ) ) ) ) | |
| Defendants, | ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Dated: February 10, 2022

Steven A. Riley (BPR # 006258)
Milton S. McGee, III (BPR # 024150)
Elizabeth O. Gonser (BPR # 026329)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rwjplc.com
tmcgee@rwjplc.com
egonser@rwjplc.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309
(404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
rsolomon@kslaw.com

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

ARGUMENT .................................................................................................................... 6

I.      THE ADDITIONAL DISCOVERY PLAINTIFFS SEEK FROM PRIORY IS NOT RELEVANT TO THIS ACTION. ................................................................................... 6

        A.      The Additional "Substantive" Discovery Plaintiffs Seek Is Not Relevant. ........... 6

        B.      Tina Walton's Custodial Documents Are Not Relevant. ..................................... 11

II.     THE ADDITIONAL DISCOVERY PLAINTIFFS SEEK FROM PRIORY IS NOT PROPORTIONATE TO THE NEEDS OF THE CASE .................................................... 13

III.    THE ADDITIONAL DISCOVERY PLAINTIFFS SEEK FROM PRIORY IS NOT WITHIN DEFENDANTS' POSSESSION, CUSTODY, OR CONTROL. ..................... 18

CONCLUSION ................................................................................................................. 21

Case 3:18-cv-00988   Document 115   Filed 02/10/22   Page 2 of 29 PageID #: 3426

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abilify (Aripiprazole) Prod. Liab. Litig.*,
No. 3:16-MD-2734, 2018 WL 4856767 (N.D. Fla. Oct. 5, 2018) ........................................... 12

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005) ................................................................................................................... 12

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
No. C10-861 RSM, 2014 WL 202102 (W.D. Wash. Jan. 17, 2014) ....................................... 20

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'Ship*,
No. 12-CV-08087 (CM)(SN), 2013 WL 2661037 (S.D.N.Y. June 12, 2013) ......................... 21

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
770 F. Supp. 2d 1299 (N.D. Ga. 2011) .................................................................................... 12

*Enslin v. Coca-Cola Co.*,
No. 2:14-CV-06476, 2016 WL 7042206 (E.D. Pa. June 8, 2016) ........................................... 16

*In re Envision Healthcare Corp. Sec. Litig.*,
No. 3:17-cv-01112, 2020 WL 6750397 (M.D. Tenn. Nov. 16, 2020) ................. 10, 14, 18, 20

*First Horizon Nat'l Corp. v. Houston Cas. Co.*,
No. 2:15-CV-2235-SHL-DKV, 2016 WL 5869580 (W.D. Tenn. Oct. 5, 2016) ................ 1, 15

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) ............................................................................................... 15

*Frye v. CSX Transportation, Inc.*,
No. 14-CV-11996, 2016 WL 2758268 (E.D. Mich. May 12, 2016) ................................. 18, 19

*Gluc v. Prudential Life Ins. Co. of Am.*,
309 F.R.D. 406 (W.D. Ky. 2015) ............................................................................................. 19

*Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*,
988 F.3d 260 (6th Cir. 2021) .............................................................................................. 14, 18

*Keyes v. Circuit Playhouse, Inc.*,
No. 2:19-CV-02788-MSN-atc, 2021 WL 6752198 (W.D. Tenn. Nov. 4, 2021) .................... 18

*Luken v. Christensen Grp. Inc.*,
No. C16-5214 RBL, 2017 WL 5483782 (W.D. Wash. Nov. 15, 2017) ............................ 14, 16

Case 3:18-cv-00988   Document 115   Filed 02/10/22   Page 3 of 29 PageID #: 3427

*Maint. Enterprises, LLC v. Orascom E&C USA, Inc.*,
   No. 3:16-CV-00014-SMR-CFB, 2018 WL 11344871 (S.D. Iowa May 3,
   2018) .................................................................................................................14, 16

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*,
   736 F. Supp. 2d 1317 (S.D. Fla. 2010) ..................................................................12

*In re Mercedes-Benz Emissions Litig.*,
   No. 16-CV-881 (KM) (ESK), 2020 WL 487288 (D.N.J. Jan. 30, 2020)................17

*Miller v. Home Depot USA, Inc.*,
   No. 3-08-0281, 2010 WL 373860 (M.D. Tenn. Jan. 28, 2010) ..............................13

*Nieman v. Grange Mut. Ins. Co.*,
   No. 11-CV-3404, 2012 WL 5471949 (C.D. Ill. Nov. 9, 2012)...............................12

*In re Omnicare Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ....................................................................... 9, 10, 11

*Scalera v. Electrograph Sys., Inc.*,
   262 F.R.D. 162 (E.D.N.Y. 2009)...........................................................................13

*SEC v. Stanford Int'l Bank, Ltd.*,
   776 F. Supp. 2d 323 (N.D. Tex. 2011) ..................................................................21

*Strategic Partners, Inc. v. FIGS, Inc.*,
   No. CV 19-2286-GW, 2020 WL 8167544 (C.D. Cal. Aug. 28, 2020)...................16

*Sudre v. The Port of Seattle*,
   No. C15-0928JLR, 2016 WL 7035062 (W.D. Wash. Dec. 2, 2016)......................12

*Thurmond v. Bowman*,
   No. 14-CV-6465W, 2016 WL 1295957 (W.D.N.Y. Mar. 31, 2016)......................13

*Tiffany (NJ) LLC v. Qi Andrew*,
   276 F.R.D. 143 (S.D.N.Y. 2011), *aff'd*, NO. 10 Civ. 9471(WHP), 2011 WL
   11562419 (S.D.N.Y. Nov. 14, 2011) .....................................................................21

*In re Toyota Motor Corp. Sec. Litig.*,
   No. CV 10-922 DSF, 2012 WL 3791716 (C.D. Cal. Mar. 12, 2012)....................10

*Willis v. Big Lots, Inc.*,
   No. 2:12-cv-604, 2017 WL 2608690 (S.D. Ohio June 16, 2017)..........................10

**Statutes**

15 U.S.C. § 78u-4(b)(3)(C)(i) ........................................................................................20

15 U.S.C. § 78u-5(c)(1)(B) ..........................................................................................2, 8

15 U.S.C. § 78u-5 ................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 26 ...........................................................................................................6, 14

Fed. R. Civ. P. 30 .............................................................................................................13

Tenn. Administrative Order 174-1(4)-(5) ........................................................................20

Timothy P. Harkness *et al.*, *Discovery in Int'l Litig.: A Guide for Judges*
    FEDERAL JUDICIAL CENTER, Dec. 2015,........................................................................20

## INTRODUCTION

Defendants[1] have already gone to great lengths—and incurred significant expense—to collect, review, and produce documents in response to Plaintiffs' sixty-one expansive requests for production. To date, Defendants have produced more than 120,000 documents, or nearly one million pages, at a cost in excess of $3.8 million. *See* Ex. A, Tucker Decl. ¶ 3. But rather than assess those documents and move forward with the next phase of discovery, Plaintiffs insist on pressing for more, seemingly intent on litigating this case over discovery instead of the merits. Without even attempting to explain how Defendants' productions are inadequate or fail to provide the relevant information responsive to their requests, Plaintiffs ask the Court to compel Defendants to collect documents from six additional custodians (the "Priory Custodians") and two shared drives (the "Priory Shared Drives") from Acadia's former subsidiary in the United Kingdom, Priory Group, which Acadia sold in 2020. Plaintiffs fail to justify the added discovery they seek, and their motion should be denied, for three primary reasons.

***First***, the documents Plaintiffs seek are not relevant to this action, and Plaintiffs' argument to the contrary relies on the wrong standard. Plaintiffs contend that the Priory Custodians and Priory Shared Drives are relevant to the UK-related claims in this case because (a) they bear on the issue of whether Defendants had a reasonable basis to issue the UK statements, and (b) the scienter of the Priory Custodians can be attributed to Acadia. Plaintiffs are wrong on both fronts.

As the Court already held, the challenged statements concerning Acadia's UK operations are forward-looking statements under the safe harbor of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-5. *See* ECF 54 at 7. As a result, to prevail on their claims as to these statements, the PSLRA requires Plaintiffs to prove that Defendants made these statements

---

[1] "Defendants" refers to Acadia Healthcare Company, Inc. ("Acadia"), Joey Jacobs, Brent Turner, and David Duckworth.

1

with "actual knowledge [that they were] false or misleading." *See* 15 U.S.C. § 78u-5(c)(1)(B). As set forth in the attached Declarations of Joey Jacobs, Brent Turner, and David Duckworth, they did not communicate with the Priory Custodians or access the Priory Shared Drives in making the statements at issue. *See* Ex. B, Jacobs Decl. ¶ 3; Ex. C, Turner Decl. ¶ 3; Ex. D, Duckworth Decl. ¶ 3. Rather, the documents on which they relied were all located at Acadia's U.S. corporate headquarters. *Id.* And, to be clear, Plaintiffs have not identified any deficiency in the Priory financial and forecast materials produced from Acadia's U.S. corporate headquarters, which is voluminous.

As to Plaintiffs' argument that the scienter of the Priory Custodians is attributable to Acadia, that too is gutted by the controlling language of the PSLRA. As to each challenged statement issued by Acadia, Plaintiffs must prove that the statement was "made by or with the approval of an executive officer of [Acadia]" who had "actual knowledge . . . that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B)(ii). Thus, under the plain language of the statute, the state of mind of the Priory Custodians is irrelevant to Acadia's scienter. The only relevant scienter is that of the executive officers, and, as noted, none of them relied on the Priory Custodians or the Priory Shared Drives in making the UK-related statements at issue.

**Second**, even if the requested documents were relevant (and they are not), this added discovery is not proportionate to the needs of this case. Plaintiffs assert that additional discovery is necessary to obtain information reflecting the "metrics, trends, analyses, factors, inputs, reports, and discussions of Priory's 2017 financial performance," ECF 107 at 12, but they ignore that they already have that information. Defendants' productions include an abundance of information concerning Priory's 2017 financial performance and Acadia's 2017 earnings guidance, which forms the basis of Plaintiffs' UK-based claims, *see* ECF 39 ¶¶ 158-77. For example, Defendants

have already produced the monthly financial reports, budgets, and operating metrics for Acadia's UK operations for the entire relevant time period, *see, e.g.*, ECF 108-23, and the monthly operating reports that Priory sent to Acadia with actual and forecasted results. Given that the challenged UK statements concern earnings guidance, and whether Priory's financial performance impacted Acadia's ability to meet that guidance, Plaintiffs simply do not need any additional information.

Indeed, Plaintiffs do not even attempt to demonstrate how the documents in their possession are insufficient to provide any relevant metrics or other pertinent information concerning Priory's financial performance. Without doing so, Plaintiffs cannot show that the added discovery they seek is proportionate to the needs of this case, particularly given the substantial burden that exists with trying to collect, review, and produce documents from this former UK subsidiary, which, at a minimum, would necessitate conducting a minimization review inside the UK to comply with UK data privacy laws.

***Finally***, even if the added discovery Plaintiffs seek was relevant and proportionate to the needs of the case, neither of which is true, Plaintiffs' motion should be denied because these documents are not within Defendants' possession, custody, or control. As Plaintiffs' acknowledge, the test for "control" in the Sixth Circuit looks to whether a party "has the legal right to obtain the documents on demand." ECF 107 at 18 (quoting *In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995)). Although Defendants have, at times, communicated with Priory to request certain information in response to Plaintiffs' demands, Acadia does not have a legal right to demand production of the information Plaintiffs seek—and Plaintiffs do not argue otherwise. But that does not leave Plaintiffs with no remedy if, in fact, they could show that Priory possesses relevant information that is proportionate to the needs of this case. There are established processes in place for Plaintiffs to seek information directly from Priory if such is necessary. Plaintiffs cannot

3

circumvent those processes by asking this Court to compel Defendants to produce documents that are not in their possession, custody, or control.

Plaintiffs have the relevant information responsive to their requests, and the Court should deny their motion that needlessly demands more, without justification.

## **BACKGROUND**

Although much of Plaintiffs' motion attempts to suggest that they have been improperly deprived of relevant information responsive to their requests for production—even due to alleged "spoliation" of evidence—that is not the reality of what has occurred in this case. Defendants have produced more than ample discovery. Defendants collected and reviewed more than 470,000 documents in response to Plaintiffs' requests for production. *See* Ex. A, Tucker Decl. ¶ 3. That included reviewing the email of 41 custodians using Plaintiffs' proposed search terms and an expansive time frame extending for more than five years. *See id.* ¶ 2. That also included documents Defendants collected from ***hundreds*** of additional sources, including a variety of Acadia shared drives. *Id.* As of the filing of this opposition, Defendants have produced from this review 120,510 documents, totaling 929,607 pages (not including those documents, like Microsoft Excel spreadsheets, produced in native format). *Id.* ¶ 3. All of this, of course, has come at a substantial expense to Defendants. The process of collecting, reviewing, and producing these materials has already cost $3.8 million, with more expense to be incurred for the process of preparing Defendants' privilege log, which is due on March 21, 2022. *Id.*

Throughout this process, even before Plaintiffs knew what documents they would be receiving, they have continued to demand that Defendants do more. Plaintiffs, for instance, repeatedly insisted that Defendants add more custodians, including requesting the addition of 87 custodians from individual Acadia facilities, *see* ECF 108-24, and they repeatedly demanded that Defendants expand their collection to include documents from Priory, *see, e.g.*, ECF 108-14. At

4

each turn, Defendants asked Plaintiffs to explain why the additional discovery was necessary considering the claims at issue in this case, which focus on statements issued by Defendants in the U.S., and in light of the extensive amount of information Defendants had already produced, or agreed to produce, concerning Priory. *See, e.g.*, ECF 108-15 at 2 ("We have produced to you the monthly financial statements, budgets, and operating metrics for the UK operations for the entire UK relevant period and beyond. You will also receive Acadia Board of Director materials discussing the UK operations and expected financial performance."); ECF 108-19 at 3 ("We have merely asked Plaintiffs to explain what types or categories of documents they believe are necessary to collect from Priory given the extensive amount of information concerning the UK operations that we have already agreed to collect and produce. But Plaintiffs refuse to do so, and have to date offered no explanation as to what particular documents are necessary to collect from Priory."); ECF 108-23 (discussing the scope of the produced Priory financial and operational information).

Plaintiffs refused to engage in any such discussion, demanding, instead, that Defendants collect and produce these additional materials because they are supposedly relevant. *See* ECF 108-19 at 3; ECF 108-22. They have provided no support for their ask regarding Priory documents, but rather have blindly argued that additional custodians must have relevant information that needs to be produced given their job titles, or their positions on an organizational chart. *See* ECF 108-22.

Plaintiffs try the same tactic for the motion now before the Court. But their superficial claims of relevance and a purported lack of burden are baseless. Plaintiffs have not demonstrated that the discovery they seek is relevant and proportionate to the needs of the case, and the Court should deny Plaintiffs' motion accordingly.

## ARGUMENT

I.  **THE ADDITIONAL DISCOVERY PLAINTIFFS SEEK FROM PRIORY IS NOT RELEVANT TO THIS ACTION.**

As Plaintiffs acknowledge, Rule 26 requires them to establish, as a threshold matter, that the discovery they seek is "relevant to the claims or defenses in the pending action." ECF 107 at 11 (quoting *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008)). They have failed to meet that burden here, and their motion must be denied for that reason alone.

A.  **The Additional "Substantive" Discovery Plaintiffs Seek Is Not Relevant.**

For the five so-called "substantive" Priory Custodians and the two requested Priory Shared Drives, Plaintiffs contend that discovery from these sources is "relevant to Plaintiffs' claims concerning Priory's operations and financial performance (and its effect on Acadia's financial results) in 2017." ECF 107 at 11-12. Plaintiffs' claims concerning Priory's operations and financial performance are set forth in Section IV.B of the First Amended Complaint. *See* ECF 39 ¶¶ 158-78. There, Plaintiffs make clear that their claims concerning Priory are predicated on Acadia's *company-wide* earnings guidance for FY 2017, which was first announced in an Acadia press release on February 23, 2017, and later affirmed and narrowed in Acadia press releases issued on April 25, 2017, and July 27, 2017, respectively. *See id.* ¶¶ 159-60, 167-68, 173. In addition to claiming that this guidance was false or misleading, Plaintiffs challenge a number of statements made by Acadia or the Individual Defendants concerning Acadia's 2017 financial guidance and related assumptions, plans, or expectations concerning Acadia's performance. *See id.* ¶¶ 160, 163, 164, 165, 171, 172, 175, 176, 177.

Plaintiffs allege that these statements were false or misleading because "Defendants had no reasonable basis to believe and did not, in fact, believe that Acadia would meet its FY 2017 financial guidance" in light of financial and operational issues with Acadia's UK facilities,

including those acquired from Priory. *See id.* ¶ 178. Plaintiffs further contend that the truth of the allegedly false or misleading statements was revealed on October 24, 2017, when Acadia announced its earnings for the third quarter of 2017, which fell below expectations, and reduced its FY 2017 guidance, with Defendant Jacobs noting that "[t]he third quarter financial results for [Acadia's] operations in the United Kingdom reflected a lower census [*i.e.*, patient admissions] and higher operating costs than anticipated." *Id.* ¶ 180-81.

Now, Plaintiffs argue that documents from the Priory sources they seek are relevant to these claims because this information would reflect on whether Defendants had a reasonable basis to make the challenged statements and because the knowledge of the Priory Custodians could be attributed to that of Acadia for purposes of scienter. *See* ECF 107 at 12-13. Plaintiffs are wrong on both accounts.

Importantly, this Court has already found that all of the challenged statements concerning Acadia's performance in the UK are forward looking under the PSLRA's safe harbor. *See* ECF 54 at 7. Specifically, when ruling on Defendants' motion to dismiss, the Court stated:

> The challenged statements at issue speak of earnings guidance, plans and objectives of management for future operations, and statements of future economic performance or are statements of assumptions underlying or relating to plans for future operations or future projections. (*See* Doc. No. 41 at 12-16 and Doc. No. 41-1 (citing Doc. No. 39 ¶¶ 121, 159, 160, 162, 163, 164, 165, 167, 168, 170, 171, 172, 173, 174, 175, 176, 177)). ***The Court finds that these statements fall squarely within the PSLRA's definition of forward-looking statements***.

*Id.* (emphasis added). The challenged statements from the First Amended Complaint referenced in the Court's order, all of which were deemed forward-looking, are the same statements for which Plaintiffs claim the requested Priory discovery is relevant. *See* ECF 107 at 3 (citing ECF 39 ¶¶ 159-77); *id.* at 4 (citing ECF 165, 172, 177).

Contrary to Plaintiffs' contentions, however, the PSLRA standard is not a "reasonable basis" and it is not the scienter of any employee. Rather, as the Court previously held, a defendant

cannot be liable for forward-looking statements unless the plaintiff establishes, among other things, that "the defendant had ***actual knowledge*** that the statements were false or misleading." ECF 54 at 6 (quoting *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 910 (M.D. Tenn. 2019) (emphasis added)).[2] For statements "made by a natural person," the PSLRA requires the plaintiff to demonstrate that the statement "was made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B)(i). And for statements "made by a business entity," like Acadia, liability can only attach where the plaintiff shows that an "executive officer of that entity" who made or approved the statement did so with "actual knowledge by that officer that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B)(ii).

In either instance, the knowledge of the Priory Custodians and the information on the Priory Shared Drives are irrelevant. The Priory documents Plaintiffs seek will not establish the actual knowledge of the Individual Defendants, nor could they show the scienter of Acadia because, under the PSLRA safe harbor, only the scienter of executives may be attributable to Acadia. Here, the executive officers that made or approved the challenged statements at issue are Defendants Jacobs, Turner, or Duckworth. Each has confirmed, under oath, that they did not rely on any of these Priory sources for the challenged statements at issue:

> In approving Acadia's press releases and public filings and making the statements referred to in the preceding paragraph [*i.e.*, the challenged statements concerning the UK], I did not communicate with Matthew Ward, Sarah Smith, Vicky Morrell, John Dalton, David Watts, or Tina Walton, and I did not access Priory Group's Finance or Compliance department computer drives in the United Kingdom. Rather, the information on which I relied for the statements referred to in the preceding paragraph was located at Acadia's U.S. corporate headquarters.

---

[2] For liability to attach to forward-looking statements, a plaintiff must also show that the statements were material and that they were not identified as forward-looking or accompanied by meaningful cautionary language. *See id.*

Ex. B, Jacobs Decl. ¶ 3; *see also* Ex. C, Turner Decl. ¶ 3 (similar); Ex. D, Duckworth Decl. ¶ 3 (same).[3]

Because the executives making or approving the challenged statements did not rely on either the Priory Custodians or the Priory Shared Drives for the challenged statements, the information Plaintiffs seek is simply not relevant to the claims or defenses at issue in this action. And because, as Plaintiffs concede, they must establish the relevance of the requested discovery for their motion to be granted, that ends the inquiry.

To be clear, however, none of the cases Plaintiffs cite in their motion supports a finding to the contrary. Plaintiffs primarily rely on *Omnicare* for their contention that the Priory Custodians' knowledge could be attributed to Acadia. *See* ECF 107 at 13. The challenged statements in that case, however, ***were not forward-looking*** and thus did not implicate the PSLRA safe harbor requirements at issue here. *See In re Omnicare Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014) (referencing plaintiff's allegation "that [defendant] had knowledge that Omnicare was not compliant with federal healthcare regulations and misled investors to believe otherwise"); *see also id.* at 463-64 ("At bottom, [plaintiff] claimed that Omnicare and the Individual Defendants knew of these allegations of fraud or non-compliance and that, rather than confessing to the company's failures to comply with the regulations, Omnicare and its officers routinely made material misrepresentations about '(1) its compliance with applicable laws, rules, and regulations; (2) its financial results; (3) the accuracy of the statements contained in its Class Period Forms 10-K and 10-Q; and (4) the root causes of its financial performance.'"). *Omnicare* does not apply to the

---

[3] Defendants' collection to date already includes the custodial documents for Mr. Turner and Mr. Duckworth. In addition, to account for the inadvertent deletion of Mr. Jacobs's email, Defendants collected documents from his personal devices and ran a search across all of Acadia's email to collect any emails sent or received by Mr. Jacobs that exist within Acadia's email system (because other Acadia personnel were also involved in such communications).

forward-looking statements at issue for this motion.[4]

Moreover, even under *Omnicare*, the Priory Custodians' knowledge cannot be attributed to Acadia. In that case, the Sixth Circuit expressly rejected the suggestion that "the scienter of any agent can be imputed to the corporation," which the court noted would make it "possible that a company could be liable for a statement made regarding a product so long as a low-level employee, perhaps in another country, knew something to the contrary," a result that "runs contrary to the PSLRA." *Id.* at 475-76. The court held, instead, that (at least as to non-forward looking statements):

> The state(s) of mind of any of the following are probative for purposes of determining whether a misrepresentation made by a corporation was made by it with the requisite scienter under Section 10(b): …
>
> a. The individual agent who uttered or issued the misrepresentation;
>
> b. Any individual agent who authorized, requested, commanded, furnished information for, prepared . . . , reviewed, or approved the statement in which the misrepresentation was made before its utterance or issuance;

---

[4] The other three cases Plaintiffs cite likewise did not involve any discussion of the standard for establishing liability for **forward-looking statements** under the PSLRA and are inapposite. *See In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2012 WL 3791716, *1 (C.D. Cal. Mar. 12, 2012) ("The Complaint . . . alleges that defendants made a number of false and misleading public statements . . . relating to the nature, causes, and severity of 'unintended acceleration' in certain automobiles manufactured by Toyota."); *id.* at *11 (referring to the potential relevance of documents to determine whether the corporate defendants "were aware of, or recklessly disregarded, information that would contradict the statements its officers and spokespersons made"—which is not the standard for forward-looking statements); *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, 2020 WL 6750397, *2 (M.D. Tenn. Nov. 16, 2020) (noting that plaintiffs' surviving claims were based on "(1) EmCare's undisclosed reliance on out-of-network billing as a driver o[f] revenue and earnings . . . ; and (2) the underperformance of certain hospital contracts that EmCare entered into in 2014-2015"); *Willis v. Big Lots, Inc.*, No. 2:12-cv-604, 2017 WL 2608690, at *1 (S.D. Ohio June 16, 2017) ("Plaintiffs allege that Defendants unlawfully inflated the value of Big Lots stock . . . by concealing the company's true financial condition"; and concerning a request to depose a CEO hired after alleged class period to address, *inter alia*, the firing of individual defendants).

c.  Any high managerial agent or member of the board of directors who ratified, recklessly disregarded, or tolerated the misrepresentation after its utterance or issuance.

*Id.* at 476. The Priory Custodians do not fall within any of these categories. The Defendants who made and approved the statements at issue did not rely on the Priory Custodians—or the Priory Shared Drives—at all for these statements. Ex. B, Jacobs Decl. ¶ 3; Ex. C, Turner Decl. ¶ 3; Ex. D, Duckworth Decl. ¶ 3. They relied exclusively on information within the U.S. *See id.* Accordingly, neither the requested Priory Custodians nor the Priory Shared Drives are relevant to determining whether Defendants had actual knowledge that the challenged statements were false or misleading. Because actual knowledge is the standard that governs for these statements, *see* ECF 54 at 6, Plaintiffs' motion must be denied.

**B.      Tina Walton's Custodial Documents Are Not Relevant.**

Plaintiffs have likewise failed to demonstrate that the custodial data they seek from Tina Walton, Priory's former Chief Information officer, is relevant to this action. Plaintiffs do not contend that Ms. Walton possesses any information relevant to the merits of any claim or defense at issue here. Instead, they argue that Defendants must collect and produce her email because it is relevant to Priory's document retention; specifically, to Priory's implementation of a 60-day automatic email deletion policy in 2018 and the inadvertent deletion of email for Nigel Myers, Priory's former Chief Financial Officer. *See* ECF 107 at 16. In other words, Plaintiffs contend that Ms. Walton's emails "are clearly relevant to the spoliation of Priory documents." *Id.*

As an initial matter, that argument fails for the same reasons discussed above—*i.e.*, if Priory documents are not relevant to the challenged statements at issue, then neither are documents concerning Priory's preservation of those documents. Again, the three Individual Defendants who made or approved the statements at issue—the only ones who matter under the PSLRA safe harbor—confirmed that the information they relied upon for those statements "was located at

Acadia's U.S. corporate headquarters." Ex. B, Jacobs Decl. ¶ 3; *see also* Ex. C, Turner Decl. ¶ 3 (same); Ex. D, Duckworth Decl. ¶ 3 (same). In light of that, Plaintiffs cannot justify seeking substantive documents from Priory on these issues, let alone seeking "discovery on discovery" concerning Priory documents.

Beyond that fundamental deficiency, the two issues Plaintiffs identify as a justification for seeking this discovery do not demonstrate spoliation. First, the fact that Priory implemented a 60-day automatic email deletion policy at a time when no lawsuit was pending against it, and thus when it had no duty to preserve such documents, is not spoliation. *See, e.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005) ("'Document retention policies' . . . are common in business" and "[i]t is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances."); *see also In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2018 WL 4856767, at *5 (N.D. Fla. Oct. 5, 2018) (finding no spoliation or misconduct arising from 60-day automatic deletion policy where such policy was implemented when no duty to preserve existed); *Nieman v. Grange Mut. Ins. Co.*, No. 11-CV-3404, 2012 WL 5471949, at *1 (C.D. Ill. Nov. 9, 2012) (same for 30-day automatic deletion policy); *Sudre v. The Port of Seattle*, No. C15-0928JLR, 2016 WL 7035062, at *25 (W.D. Wash. Dec. 2, 2016) (same); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1306 (N.D. Ga. 2011) (same for 120 day automatic email deletion policy); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1326 (S.D. Fla. 2010) (spoliation does not occur where documents are deleted pursuant to company retention policy).

Second, as Defendants' counsel has explained, Mr. Myers was timely placed on litigation hold for this matter after the lawsuit was filed, but his email account was inadvertently deleted when he departed Priory—after Acadia sold the company. *See* Ex. E, 3/6/21 Ltr. from L. Bugni to

C. Wood. Plaintiffs requested a Rule 30(b)(6) deposition of Acadia on this and other issues, and Acadia's representative testified to the full extent of Acadia's knowledge on this issue. *See* ECF 108-8 at 34:7-17; 138:4-24; 157:9-158:7. Acadia did not own Priory when that inadvertent deletion occurred and can provide no more information on that issue than it has already. But this, in the end, is a sideshow. The information Plaintiffs seek is not relevant in the first place, and the inadvertent deletion of irrelevant documents certainly does not show spoliation. *See Thurmond v. Bowman*, No. 14-CV-6465W, 2016 WL 1295957, at *8 (W.D.N.Y. Mar. 31, 2016), *report and recommendation adopted*, 199 F. Supp. 3d 686 (W.D.N.Y. 2016) (rejecting spoliation motion where items at issue "were deleted inadvertently and were not relevant to this litigation"); *see also Miller v. Home Depot USA, Inc.*, No. 3-08-0281, 2010 WL 373860, at *2 (M.D. Tenn. Jan. 28, 2010) ("The Plaintiffs have failed to show any relevance the videotape could be to the litigation or how they are prejudiced by the unavailability of the videotape. Accordingly, the Court concludes that the Plaintiffs' motion should be denied."); *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 178 (E.D.N.Y. 2009) (denying motion for spoliation sanctions where the plaintiff failed to show, "aside from speculation," that documents "would have been favorable to her case").[5]

In short, Plaintiffs have not demonstrated that the added discovery they seek from Priory is relevant to this action and, as a result, their motion should be denied.

## II. THE ADDITIONAL DISCOVERY PLAINTIFFS SEEK FROM PRIORY IS NOT PROPORTIONATE TO THE NEEDS OF THE CASE.

Although the Court need go no further, relevance is not the only requirement that must be

---

[5] Although Plaintiffs raise similar unfounded contentions as to Acadia—*i.e.*, implementation of a 30-day deletion policy when no duty to preserve existed and the inadvertent deletion of Mr. Jacobs's email—none of that demonstrates spoliation either. Defendants have explained at length how Mr. Jacobs was appropriately put on legal hold but that his email was inadvertently deleted when he departed the company. *See* Ex. E, 3/6/21 Ltr. from L. Bugni to C. Wood. And none of that is relevant to Plaintiffs' motion in any event.

met to justify the discovery Plaintiffs seek. Under Rule 26, to be discoverable the information sought must also be "proportional to the needs of the case," when considering (among other things) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, Plaintiffs contend that they bear no burden of demonstrating proportionality, *see* ECF 107 at 17, but their own cited case law suggests otherwise. *See In re Envision*, 2020 WL 6750397, at *2 ("Under Rule 26, [t]here is now a specific duty for the court and the parties to consider discovery in the light of its proportional[ity] to the needs of the case") (internal quotation and citation omitted). That is consistent with guidance from the Sixth Circuit, which has explained that the change in Rule 26 to add a proportionality requirement "ensures that the parties and courts share the 'collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (quoting Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment). But irrespective of who bears the burden on this issue, the discovery Plaintiffs seek is not proportionate to the needs of this case.

As a starting point, to determine whether the discovery Plaintiffs seek is proportionate, the Court must consider the extensive discovery that has already been produced and whether the likely benefit of this additional discovery outweighs the burden of obtaining it. *See, e.g.*, *Maint. Enterprises, LLC v. Orascom E&C USA, Inc.*, No. 3:16-CV-00014-SMR-CFB, 2018 WL 11344871, at *2-3 (S.D. Iowa May 3, 2018) (rejecting request for further discovery "because any benefit would not likely outweigh the burden or expense" given "the significant amount of discovery that had already been produced"); *see also Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2017 WL 5483782, at *2 (W.D. Wash. Nov. 15, 2017) (same where additional discovery was not proportionate given "the amount of discovery already available," which

included "over 90,000 pages of documents"); *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (noting that a party "must demonstrate that the additional requested custodians would provide unique relevant information not already obtained"); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5869580, at *9 (W.D. Tenn. Oct. 5, 2016) (denying motion to compel where "permitting the Plaintiffs to conduct 'other claims' discovery would indeed result in a fishing expedition, with little or no relevance to the Plaintiffs' breach of contract or bad faith claim and with significant and disproportionate burden to the Defendants"). Under this standard, the discovery Plaintiffs seek is not proportionate.

According to their own allegations, what Plaintiffs contend is relevant about Priory is information concerning its financial performance in 2017, and how such performance impacted Acadia's ability to meet its FY 2017 financial guidance. *See* ECF 39 ¶ 158. To that end, Plaintiffs allege that "the Company's weakened patient admissions [a/k/a 'census'] and increased labor costs in its U.K. operations did not support its publicly touted financial guidance." *Id.* But Defendants have already produced the information necessary to evaluate those allegations. Defendants have produced the monthly operational reports the UK submitted to Acadia; detailed monthly financials from the UK operations; the UK's forecasted operating results; the UK's narrative to explain those results; the 2017 budgets and operating metrics for the UK operations; Acadia's board materials, which contain additional information concerning the financial and operational performance of Acadia's operations in the UK; and a host of other information reflecting such financial and operational performance, including the due diligence materials for Acadia's sale of Priory. *See* ECF 108-23 at 1. This information includes tracking the census and operating costs for Acadia's UK operations—the two factors that Plaintiffs identify as undermining Acadia's ability to meet its

FY 2017 financial guidance, *see* ECF 39 ¶ 158. Defendants have also produced the relevant information concerning Acadia's 2017 financial guidance, including information reflecting the basis of that guidance.

Plaintiffs do not explain how the added discovery they seek is necessary in light of what is already in their possession. They opt, instead, to dismiss these productions entirely in a footnote, on the basis that these documents are not enough to provide the information they seek because this information was merely *about* Priory but did not come *from* Priory. *See* ECF 107 at 9 n.9. That distinction is irrelevant and, at least in part, wrong. As Defendants have explained, the detailed monthly financial reports they produced were provided to Acadia by the UK operations during the relevant time period. *See* ECF 108-23 at 1. Even setting that aside, Plaintiffs cannot show that the additional discovery they seek concerning Priory is proportionate to the needs of this case without explaining how it will provide relevant information that goes beyond what Defendants have already produced. *See Maint. Enterprises*, 2018 WL 11344871, at *2 (denying motion to compel where requesting party failed to demonstrate that likely benefit of added discovery outweighed the burden given the "significant amount of discovery that had already been produced"); *Luken*, 2017 WL 5483782, at *2 (similar); *Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW (KSx), 2020 WL 8167544, at *3–4 (C.D. Cal. Aug. 28, 2020) (similar); *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (rejecting request for additional custodians where plaintiff had not "pointed to any evidence to suggest that a search of either of their ESI would produce responsive information that has not already been captured").

And with Plaintiffs failing to demonstrate a likely benefit from this additional discovery, the burden associated with collecting, processing, reviewing, and producing the information they seek clearly demonstrates that it is not proportionate to the needs of this case. This discovery is

particularly burdensome given the cross-border nature of the requests. To produce the documents Plaintiffs seek, Defendants would be forced to conduct a minimization review to comply with UK data privacy laws. *See In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881 (KM) (ESK), 2020 WL 487288, at *1 (D.N.J. Jan. 30, 2020) (noting that the GDPR's definition of personal data, which aligns with that in the UK, "inherently includes information like an individual's name and job title, information that is generally considered benign in U.S. litigation . . . ."). That means Defendants would have to arrange for the documents to be reviewed locally in the UK to ensure that the materials could be transferred to the U.S. in the first place. *See* Ex. A, Tucker Decl. ¶ 6. That would involve setting up a database in the UK, applying search terms to the data in the UK, and then having attorneys in the UK review the documents that hit on the search terms to identity documents implicating UK privacy restrictions. *See id.* And if the documents implicated such restrictions, they would have to be substantially redacted before transferring to the U.S. All of this would be in addition to the review for responsiveness and privilege.

The volume of information at issue is also substantial. Although Defendants do not believe the email custodians (other than Tina Walton) are likely to have a significant amount of documents for the time period in question given Priory's regular email retention policy, Defendants' counsel has been informed that the requested Priory Shared Drives contain approximately 2.6 terabytes of data. *See id.* ¶ 5. Based on the review conducted to date, Defendants' counsel estimates that the collection, processing, review, and production of these materials—using Plaintiffs' proposed search terms—would cost at least $1.5 million. *See id.* ¶¶ 6-7. That substantial burden outweighs any likely benefit from this added discovery, particularly given the irrelevance of this information to the claims at issue and that Plaintiffs have never explained how the information they seek is necessary in light of the substantial amount of information concerning Priory that has already been

produced. Plaintiffs' motion should be denied accordingly. *See Helena Agri-Enterprises*, 988 F.3d at 273 (upholding denial of motion to compel where "additional discovery would not outweigh the 'proportionality' concerns implicated by the delay and cost generated by continued discovery").

### III. THE ADDITIONAL DISCOVERY PLAINTIFFS SEEK FROM PRIORY IS NOT WITHIN DEFENDANTS' POSSESSION, CUSTODY, OR CONTROL.

Plaintiffs' motion must be denied for an additional, independent reason: Defendants do not have possession, custody, or control of the information Plaintiffs seek. Plaintiffs do not contend that Defendants have actual possession or custody of this information, which belongs to a third party and is housed in the UK. The only question, then, is whether Defendants nonetheless have "control" of this information such that they could be ordered to obtain and produce it.

As Plaintiffs acknowledge, in the Sixth Circuit, a party may be considered to have control of information that it does not possess only if the party "has the legal right to obtain the documents on demand." ECF 107 at 18 (quoting *In re Bankers Tr. Co.*, 61 F.3d at 469). That inquiry is often governed by the contracts between the relevant parties, and to compel production under this scenario "[t]he party must be able to command release of the documents by the person or entity in actual possession." *Keyes v. Circuit Playhouse, Inc.*, No. 2:19-CV-02788-MSN-atc, 2021 WL 6752198, at *2 (W.D. Tenn. Nov. 4, 2021) (quoting *Gen. Env't Sci. Corp. v. Horsfall*, 25 F.3d 1048, 1994 WL 228256, *10 n.15 (6th Cir. 1994)). Although Plaintiffs state, in a footnote, that some district courts outside of the Middle District of Tennessee have instead applied a "practical ability" test to determine control, *see* ECF 107 at 18 n.14, that is not the test in the Sixth Circuit. *See In re Envision*, 2020 WL 12572931, at *6 ("The Parties agree that the controlling caselaw holds that 'documents are deemed to be within the 'possession, custody or control' . . . if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand.'"); *Frye v. CSX Transportation, Inc.*, No. 14-CV-11996, 2016 WL 2758268, at *4 (E.D.

Mich. May 12, 2016) (emphasizing that the Sixth Circuit and other courts have consistently applied the "legal right" test).

The applicable test is not satisfied here, and Plaintiffs do not contend otherwise. After citing the legal right test, Plaintiffs merely go on to argue that Defendants can be compelled to produce the information they seek because Defendants previously obtained certain discovery from Priory in response to Plaintiffs' requests. *See* ECF 107 at 19. Plaintiffs even expressly rely on the practical ability test that does not apply in this Circuit. *See id.* ("Because the Priory documents are within Defendants' control, and Defendants have the *ability* to obtain them, Defendants should be ordered to collect and search the Priory sources discussed herein.") (emphasis added). But the fact that Acadia was previously able to obtain certain information from Priory does not establish that it has a legal right to command the release of the information Plaintiffs seek. Indeed, the contract governing Acadia's sale of Priory granted Acadia no such right, *see* Ex. F, Share Purchase Agreement, 1/7/21, and Defendants have repeatedly explained to Plaintiffs that they cannot force Priory to produce information.

Defendants, instead, were willing to relay Plaintiffs' requests to Priory and see if Priory would voluntarily comply, provided that Plaintiffs could legitimately explain why the information they seek is relevant and proportionate to the needs of this case. *See* ECF 108-21. Plaintiffs have failed to do so here, as discussed above. And, even if they had met this burden, Plaintiffs' motion must be denied because Defendants do not have the legal right to command the release of this information. *See Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 416 (W.D. Ky. 2015) (denying motion to compel where defendant lacked actual possession, custody, or control of documents and lacked legal right "based on its contracts with the . . . vendors and physicians" with possession of the documents); *Frye*, 2016 WL 2758268, at *4 (denying motion to compel where

the plaintiff failed to show that the defendants had the ability to "command the release" of the documents at issue); *In re Envision*, 2020 WL 12572931, at *6 (same).

Contrary to Plaintiffs' suggestion, however, that does not raise a preservation issue under the PSLRA. *See* ECF 107 at 19 n.15. The PSLRA does not prohibit a company from selling a subsidiary while an action is pending, nor does it require a defendant to collect documents while a motion to dismiss is pending. It requires only that parties take steps to preserve documents during the pendency of such a motion. *See* 15 U.S.C. § 78u-4(b)(3)(C)(i). The local standard in this Court likewise does not require a party to collect documents during the pending of a motion to dismiss, when the case is stayed. *See* M.D. Tenn. Administrative Order 174-1(4)-(5) (providing that a party has "an obligation to take reasonable and proportional steps to preserve discoverable ESI in the party's possession, custody or control" but "need not collect ESI before they have conferred regarding the form of production at the Rule 26(f) conference"). Here, Defendants took steps to preserve documents while their motion to dismiss was pending, *see, e.g.*, Ex. E, 3/6/21 Ltr. from L. Bugni to C. Wood, thereby satisfying their obligations under the PSLRA and M.D. Tenn. Administrative Order 174-1(4)-(5).

Finally, the fact that Defendants do not have possession, custody, or control over Priory documents does not mean that Plaintiffs have no option to obtain this information, if discoverable. The Hague Convention process was created precisely to facilitate cross-border discovery in such a scenario. *See* Timothy P. Harkness *et al.*, *Discovery in Int'l Litig.: A Guide for Judges*, Federal Judicial Center, Dec. 2015, at 9010 (noting that the Hague Convention "has become the preferred means of obtaining discovery from foreign non-parties to a U.S. litigation, largely because the mechanisms provided incorporate the express terms of the responding jurisdiction"); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2014 WL 202102, at *2 (W.D.

Wash. Jan. 17, 2014) ("Use of Hague Convention procedures is particularly relevant where, as here, discovery is sought from a non-party in a foreign jurisdiction."). If Plaintiffs believe that Priory possesses information that is necessary for this case, they can seek that information directly from Priory. *See CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'Ship*, No. 12-CV-08087 (CM)(SN), 2013 WL 2661037, at *8-16 (S.D.N.Y. June 12, 2013) (denying motion to compel production abroad and ordering use of Hague Convention); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160 (S.D.N.Y. 2011), *aff'd*, NO. 10 Civ. 9471(WHP), 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) (ordering party to proceed through Hague Convention for discovery of foreign non-parties); *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 341 (N.D. Tex. 2011) (same).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

Dated: February 10, 2022

Respectfully submitted,

*/s/ Steven A. Riley*
Steven A. Riley (BPR # 006258)
Milton S. McGee, III (BPR # 024150)
Elizabeth O. Gonser (BPR # 026329)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rwjplc.com
tmcgee@rwjplc.com
egonser@rwjplc.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309
(404) 572-4600
jpcorley@kslaw.com

lbugni@kslaw.com
bkeel@kslaw.com
rsolomon@kslaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2022, I electronically filed the foregoing

document and accompanying exhibits with the Clerk of Court by using the CM/ECF system which

will send a notice of electronic filing to the following:

Christopher M. Wood
ROBBINS GELLER RUDMAN &
DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
cwood@rgrdlaw.com

Danielle S. Myers
David C. Walton
Darryl J. Alvarado
J. Marco Janoski Gray
Ting H. Liu
Timothy Alexander Benwa Folkerth
ROBBINS GELLER RUDMAN &
DOWD LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
danim@rgrdlaw.com
davew@csgrr.com
dalvarado@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
afolkerth@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
jmartin@barrettjohnston.com

Michael Bauman
PITTA LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3890
Fax: (212) 652-3891
mbauman@pittalaw.com

Justin J. Lannoye
DOWD, BLOCH, BENNETT,
CERVONE, AUERBACH &
YOKICH LLP
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(312) 372-1361
Fax: (312) 372-6599
jlannoye@laboradvocates.com

Thomas C. Michaud
Vanoverbeke, Michaud &
Timmony, P.C.
79 Alfred Street
Detroit, MI 48201
(313) 578-1200
tmichaud@vmtlaw.com

Matthew M. Guiney
Patrick Donovan
Regina M. Calcaterra
Thomas H. Burt
Wolf, Haldenstein, Adler, Freeman &
Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600
guiney@whafh.com
donovan@whafh.com
calcaterra@whafh.com
burt@whafh.com

Paul Kent Bramlett
Bramlett Law Offices
P O Box 150734
Nashville, TN 37215
(615) 248-2828
pknashlaw@aol.com


*/s/ Steven A. Riley*