# Exhibit A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ACADIA HEALTHCARE COMPANY, INC., *et al.*, <br><br> Defendants, | CIVIL ACTION NO.: 3:18-cv-00988 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Alistair Newbern |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Dated: April 22, 2022

Steven A. Riley (BPR # 006258)
Milton S. McGee, III (BPR # 024150)
Elizabeth O. Gonser (BPR # 026329)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rjfirm.com
tmcgee@rjfirm.com
egonser@rjfirm.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309
(404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
rsolomon@kslaw.com

*Counsel for Defendants*

# INTRODUCTION

Defendants have demonstrated that the challenged statements for Plaintiffs' US-based claims did not impact Acadia's stock price and that *Basic*'s presumption of reliance therefore does not apply to those claims. ECF 120 at 7-20.[1] Plaintiffs allege that the "truth" of those misstatements was revealed through two corrective disclosures: the October 11, 2018 *Aurelius Value* report and the November 16, 2018 *Seeking Alpha* article. *See* ECF 39 ¶¶ 9, 11, 129, 148, 157. But neither of those disclosures impacted Acadia's stock price, which is demonstrated by both experts' event studies, an evaluation of analyst reports, and more. *See* ECF 120 at 7-20; ECF 121-1 ¶¶ 28-56.

Faced with that compelling evidence, which "severs the link" between Acadia's stock price and the alleged misrepresentations, *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988), Plaintiffs resort to a series of misdirection and strawman arguments. They also propose an impossible burden that, if accepted, would effectively prevent any defendant from defeating class certification for a lack of price impact. None of Plaintiffs' arguments can be squared with Supreme Court precedent on these issues, the principles of market efficiency, or the evidence before the Court. Accordingly, the Court should reject Plaintiffs' contentions, find that Defendants have rebutted the *Basic* presumption for the US-based claims, and limit the certified class to the UK Class Period.

# ARGUMENT

***Impact of UK Class Period***. Plaintiffs begin their Reply with the absurd contention that because Defendants do not oppose certification as to the UK-based claims, the Court must also certify the US-based claims. *See* ECF 131 at 1 (arguing that Defendants' "concession dooms their attempt to prove a complete lack of price impact"). As support, Plaintiffs cite two cases where courts found that defendants failed to rebut the *Basic* presumption when they showed a lack of

---

[1] Capitalized terms used herein have the same meanings specified in Defendants' Opposition.

price impact for some, but not all, of the alleged corrective disclosures. *See id.* at 3 (citing *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 500 n.8 (M.D. Tenn. 2019)). The alleged corrective disclosures at issue in those cases, however, related to the ***same*** claims and ***same*** alleged misstatements. *See Monroe Cnty.*, 332 F.R.D. at 375-76, 393; *Grae*, 330 F.R.D. at 500 n.8. That is not the situation here.

Plaintiffs' UK-based claims are entirely distinct from their US-based claims. *See* ECF 39 §§ V(A) and V(B). The October 24, 2017 disclosure that Plaintiffs allege revealed the "truth" of the UK-based claims was Acadia's third quarter earnings release, which reported earnings below expectations and cited the UK performance as negatively impacting results. *See id.* ¶¶ 4-5, 41-43. But Plaintiffs do not allege that the truth of the US-based claims was revealed on that date; they allege that such "truth" was revealed a year later through third party reports. *See id.* ¶¶ 129, 148, 157, 185-190. It would make absolutely no sense to certify the US Class Period merely because Defendants do not oppose certification as to the UK Class Period, when the claims are premised on different alleged misstatements and different corrective disclosures. Plaintiffs cite no case that remotely supports that suggestion, which cannot be reconciled with the rigorous analysis the Court must apply before granting class certification for any claim. *See* ECF 120 at 6.

***Price Impact Standard***. Next, Plaintiffs offer another strawman by suggesting an impossible burden for price impact. They argue that Defendants must prove "a complete lack of price impact" and "prove that 100% of the price reactions on the alleged corrective disclosure dates were caused by information entirely unrelated to Plaintiffs' allegations." ECF 131 at 2-3. According to Plaintiffs' reasoning, even one analyst or news reporter expressing an opinion that the stock price dropped due to the alleged corrective disclosure would be sufficient to prevent Defendants from meeting this burden. *See id.* at 5-6. But that is not the law.

The governing standard is predominance of the evidence—not absolute certainty. As the Supreme Court has held, "[t]he district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021). And, contrary to Plaintiffs' contention (ECF 131 at 11), the potential overlap between the price impact evidence presented here and evidence concerning loss causation does not mean that these issues are off limits. As the Supreme Court has held, "a court cannot conclude that Rule 23's requirements are satisfied without considering all evidence relevant to price impact," *Goldman*, 141 S. Ct. at 1961, and "[t]hat is so regardless whether the evidence is also relevant to a merits question like materiality" or loss causation, *id.* at 1960.

***Aurelius Value Report***. After the misdirection on burden, Plaintiffs raise three incorrect points on the *Aurelius Value* report. First, they argue there was a statistically significant price reaction from that report if one considers a two-day cumulative reaction following the report's release. *See* ECF 131 at 4. Defendants did not "ignore" the price reaction for this two-day period, as Plaintiffs suggest. To the contrary, Defendants' expert explained that the two-day reaction does not show price impact because, if the market is efficient (as it must be for the *Basic* presumption to apply), the price would immediately react to new information. *See* ECF 121-1 ¶ 31 ("[G]iven that there was no statistically significant price reaction on October 11 according to Plaintiffs' own event study, there is no basis to conclude that in an efficient market Acadia's price would start reacting to the *Aurelius Value* report on October 12"); Allen Rebuttal ¶¶ 17 n.23, 19-21.[2]

Second, Plaintiffs argue that Defendants have failed to prove a "complete" lack of price

---

[2] Further undermining their current assertion, Plaintiffs' expert likewise looked at one-day reactions for purposes of his initial event study. *See id.* ¶ 17 n.23.

impact because two news outlets (Bloomberg and "TheFlyOnTheWall.com") suggested that *Aurelius Value* caused the (statistically insignificant) price decline. *See* ECF 131 at 5. But determining what caused a stock price to move is a matter of expert testimony. The mere opinion of online news outlets does not show price impact, particularly when the expert event studies show there was no statistically significant stock price reaction in the first place. The two cases Plaintiffs cite are inapposite and do not contradict this fundamental point.[3]

Third, Plaintiffs argue that showing there was no statistically significant price reaction from the *Aurelius Value* report is insufficient because it shows only "a lack of evidence that the *Aurelius Value* report caused the stock price to react, not affirmative evidence that it did not." ECF 134-1 ¶ 26; *see also* ECF 131 at 6-7. That is a distinction without a difference. Plaintiffs acknowledge that the lack of a statistically significant price reaction is *evidence* of a lack of price impact, which is well established. *See, e.g.*, *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) (showing lack of statistically significant price reaction "rebutted the *Basic* presumption"); *In re Finisar Corp. Sec. Litig.*, No. 5:11-CV-01252-EJD, 2017 WL 6026244, at *9 (N.D. Cal. Dec. 5, 2017) (same); *see also* ECF 120 at 9 (citing others). And even if, as Plaintiffs assert, that lack of price movement is not enough on its own to show a lack of price impact, Ms. Allen did not rely exclusively on statistical insignificance, she identified a litany of other evidence demonstrating no price impact. *See* ECF 121-1 ¶¶ 30-34.[4]

---

[3] *See Local 703, I.B. of T. Grocery and Food Employees Welfare Fund v. Regions Fin. Corp.*, 2014 WL 6661918, at *7 (N.D. Al. Nov. 19, 2014) (stock price "fell significantly" following alleged corrective disclosure); *Grae*, 330 F.R.D. at 500 (evaluating internal communications when assessing whether report was "corrective," not whether it had price impact).

[4] Plaintiffs' expert also argues that a September 12, 2018 report from Off Wall Street Consulting Group concerning similar "quality of care" issues provides further evidence that "investors were concerned about the value impact of Acadia's alleged misconduct." *See* ECF 134-1 ¶ 19. But like the alleged corrective disclosures, this article had no statistically significant impact on Acadia's stock price. *See* Allen Rebuttal ¶¶ 5-9. Plaintiffs have now swung and missed for a third time.

***Seeking Alpha Article***. Plaintiffs' three arguments regarding the *Seeking Alpha* article likewise fail. First, they contend that Ms. Allen's analysis of intraday stock price changes—which shows the stock price was impacted by the CNBC article, not *Seeking Alpha*—ignores "the time it takes for the impact of the *Seeking Alpha* article to be fully incorporated into the stock price." ECF 131 at 9. That, again, is contrary to an efficient market, in which new information is rapidly impounded into the stock price. *See* Allen Rebuttal ¶¶ 19-21. Second, Plaintiffs argue that Ms. Allen ignores that the CNBC report included a reference to "some nasty stuff going around on Acadia," which they claim is related to the alleged fraud. *See* ECF 131 at 9-11. Plaintiffs, however, provide no support to indicate that the market interpreted this vague reference to refer to the *Seeking Alpha* article. They likewise do not allege that the CNBC report contained any corrective information. Third, Plaintiffs argue that the CNBC report of negotiations for a private equity buyout stalling does not show a lack of price impact because that, too, was related to the alleged fraud. Specifically, they claim (without support) that the third parties walked away from negotiations due to the information revealed in the two alleged corrective disclosures. *See* ECF 131 at 11-13. What Plaintiffs fail to acknowledge, however, is that even after these third parties were aware of the allegedly corrective information, they continued to value Acadia in excess of its publicly-traded stock price. Allen Rebuttal ¶ 25. Thus, although Plaintiffs provide no evidence demonstrating that the deal stalled because of *Aurelius Value* or *Seeking Alpha*, their contentions further fail to show price impact because the third parties thought the price of Acadia should be **higher** than market price even knowing of the allegedly corrective information. *See id.* ¶¶ 22-25.

## CONCLUSION

For these reasons, and those explained in Defendants' Opposition, Defendants respectfully request that the Court limit any certified class to the UK Class Period.

Dated: April 22, 2022

Respectfully submitted,

*/s/ Steven A. Riley*
Steven A. Riley (BPR # 006258)
Milton S. McGee, III (BPR # 024150)
Elizabeth O. Gonser (BPR # 026329)
**RILEY & JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rjfirm.com
tmcgee@rjfirm.com
egonser@rjfirm.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, GA 30309
(404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
rsolomon@kslaw.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Christopher M. Wood
ROBBINS GELLER RUDMAN & DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
cwood@rgrdlaw.com

Danielle S. Myers
David C. Walton
Darryl J. Alvarado
J. Marco Janoski Gray
Ting H. Liu
Timothy Alexander Benwa Folkerth
ROBBINS GELLER RUDMAN & DOWD LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
danim@rgrdlaw.com
davew@csgrr.com
dalvarado@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
afolkerth@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
jmartin@barrettjohnston.com

Michael Bauman
PITTA LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3890
Fax: (212) 652-3891
mbauman@pittalaw.com

Justin J. Lannoye
DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH LLP
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(312) 372-1361
Fax: (312) 372-6599
jlannoye@laboradvocates.com

Thomas C. Michaud
Vanoverbeke, Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201
(313) 578-1200
tmichaud@vmtlaw.com

Matthew M. Guiney
Patrick Donovan
Regina M. Calcaterra
Thomas H. Burt
Wolf, Haldenstein, Adler, Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600
guiney@whafh.com
donovan@whafh.com
calcaterra@whafh.com
burt@whafh.com

Paul Kent Bramlett  
Bramlett Law Offices  
P O Box 150734  
Nashville, TN 37215  
(615) 248-2828  
pknashlaw@aol.com  


*/s/ Steven A. Riley*