UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM,<br><br>    Plaintiff,<br><br>v.<br><br>ACADIA HEALTHCARE COMPANY, INC., et al.,<br><br>    Defendants. | Case No. 3:18-cv-00988<br><br>Chief Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

Lead Plaintiffs Chicago & Vicinity Laborers' District Council Pension Fund and New York Hotel Trades Council & Hotel Association of New York City, Inc., Pension Fund (collectively, Plaintiffs) filed a motion for leave to file an unredacted version of the parties' April 19, 2024 joint discovery dispute statement and the eight exhibits attached thereto under seal. (Doc. No. 251.) Plaintiffs filed this motion in compliance with the terms of the parties' stipulated protective order, which requires any documents that the parties have designated as confidential to be filed under seal by the party offering the confidential document. (Doc. No. 76.) Although Plaintiffs filed the instant motion, they oppose the exhibits remaining under seal.

Defendants Acadia Healthcare Company, Inc. (Acadia), David Duckworth, Brent Turner, and Deborah H. Jacobs, as the executor of the estate of Joey A. Jenkins, (collectively, Defendants) maintain that the dispute statement and exhibits should be filed under seal because the statement

and exhibits are not relevant to the discovery dispute and because the documents "contain commercially sensitive information of both Acadia" and non-party Priory Group. (Doc. No. 254.)

For the reasons set forth below, Plaintiffs' motion for leave to file under seal the dispute statement and related exhibits will be granted subject to further review.

I.      Background

   A.      Factual Background

Plaintiffs allege that Acadia Healthcare Company, Inc. (Acadia), then-President Brent Turner, then-Chief Executive Officer (CEO) Joey A. Jacobs,[1] and then-Chief Financial Officer (CFO) David Duckworth (collectively, Defendants) made "materially false and misleading statements and omissions regarding Acadia's business and operations [ ]" that ultimately caused Plaintiffs and other investors to suffer "hundreds of millions of dollars in harm . . . ." (Doc. No. 39.) Between April 30, 2014, and November 15, 2018, Plaintiffs and other similarly situated investors purchased shares of Acadia securities. (*Id.*) Plaintiffs assert that Acadia, Turner, Jacobs, and Duckworth repeatedly misrepresented Acadia's value and ultimately inflated the price of Acadia securities artificially. (*Id.*) When Acadia announced on October 24, 2017, that its operation in the United Kingdom was not performing as expected, the price of Acadia securities dropped, and the stock suffered "a decline of 30%" between October 24 and October 25, 2017. (*Id.* at PageID# 730, ¶ 8.) According to Plaintiffs, the resulting losses in the value caused them and similarly situated investors "hundreds of millions of dollars[.]" (*Id.* at PageID# 732, ¶ 12.)

---

[1]     Jacobs passed away after this litigation commenced and has since been terminated as a defendant. (Doc. No. 235.) Deborah H. Jacobs was substituted by unopposed motion as a defendant under Federal Rule of Civil Procedure 25(a) and presently serves as a defendant as Executor of the Estate of Joey A. Jacobs. (Doc. No. 236.)

2

### B. Relevant Procedural Background

On May 21, 2021, the parties proposed, and the Court approved, a stipulated protective order (hereafter, the Stipulated Order) that set the parameters governing the parties' duties and obligations for the discovery of electronically stored information (ESI). (Doc. Nos. 75, 76.) The agreed protective order "establishe[d] procedures for the designation and protection of confidential and proprietary information produced during this litigation and the procedures for challenging any such designation." (Doc. No. 76, PageID# 2044.) It also provides a mechanism for challenging and de-designating materials that opposing party has marked as confidential. (*Id*. at PageID# 2053–54, § VI., ¶¶ A–D.)

Beginning in July 2021, the parties developed disagreements over the scope of discovery and the confidential designation of documents. (Doc. No. 86.) One significant dispute involved Plaintiffs' request that Defendants—specifically Acadia—collect and produce documents from five custodians at the non-party Priory Group and otherwise collect and produce documents related to Acadia's policies regarding preservation, collection, and destruction of ESI. (Doc. Nos. 86, 102, 106, 115, 124, 158, 170, 253.) The Priory Group is "a behavioral health company based in the [U.K.] that Acadia acquired during the [c]lass [p]eriod" in 2016 and sold in 2021. (Doc. No. 102, PageID# 2369.) According to the Plaintiffs, "Acadia's overall economic performance was heavily dependent on the performance of Priory and its U.K. facilities" by the beginning of 2017 and, thus, Priory's records "are undoubtedly relevant to this case." (*Id*. at PageID# 2370.)

The Court held a discovery dispute conference with counsel for the parties on April 1, 2024, regarding the status of document production. In the conference, counsel identified the resolution of outstanding privilege issues raised in their prior discovery dispute statements as central to completing fact discovery. (Doc. No. 250.) Finding that "recent document production may be relevant to the resolution of the privilege issues," the Court ordered the parties "to file a

3

joint discovery dispute statement that addresses any relevant developments" and advised that "[c]ounsel need to repeat arguments made in their prior statements." (*Id.*)

In the supplemental joint discovery dispute statement, Plaintiffs argued that the recent document production provided additional support for its arguments that they are entitled to spoliation-related discovery tied to Acadia's implementation of an email retention policy at Priory. (Doc. No. 253.) Defendants argued that, instead of providing the Court with the requested update regarding the parties' privilege dispute, Plaintiffs reiterated their arguments regarding Priory's email retention policy and Acadia's duty to preserve ESI between the voluntary dismissal of a related matter and the filing of this action. (*Id.*) The eight exhibits Plaintiffs attached to the joint discovery dispute statement are the subject of their motion to seal.

## II. Legal Standard

"The public has a strong interest in obtaining the information contained in the court record[,]" and there is a "'strong presumption'" that court records be open. *Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (alteration omitted) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179–80 (6th Cir. 1983)). This presumption of openness rests on the idea that, among other things, "the public is entitled to assess for itself the merits of judicial decisions" and has a strong interest in viewing the evidence and arguments on which courts base those decisions. *Id.* A party seeking to seal court documents therefore bears a heavy burden: "Only the most compelling reasons can justify non-disclosure of judicial records." *Id.* (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). In general, "only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public access." M.D. Tenn. R. 5.03(a) (contents of motion to seal). The party seeking to seal all or part of a record "must 'analyze in detail,

4

document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)); see also M.D. Tenn. R. 5.03(a) (requiring that motions to seal "specifically analyz[e] in detail, document by document, the propriety of secrecy, providing factual support and legal citations").

**III.     Analysis**

The documents addressed by Plaintiffs' motion to seal are:

- Exhibit 1: emails among Priory executives Dr. Sylvia Tang, Tina Walton, and Trevor Torrington regarding implementation of the document retention policy.

- Exhibit 2: slides from an internal presentation by Walton to Priory titled "Proposed E-mail Retention Solution"

- Exhibit 3: minutes from a Priory telephone conference at which Priory email retention policy was discussed

- Exhibit 4: emails between Walton and Priory employee Adrian Dallison regarding the retention of email attachments by Barracuda storage program

- Exhibit 5: partially redacted email from Walton to Priory employees James Hopton and Clair Dunn regarding implementation of email retention policy at Priory

- Exhibit 6: excerpt of the June 7, 2022, deposition of Ron Fincher regarding Acadia's email retention policy

- Exhibit 7: emails among Acadia employees regarding video surveillance retention policy

- Exhibit 8: emails among Priory officials Nigel Myers, Torrington, Vicky Morrell, Tang, Steven O'Neill, John Dalton, and Sarah Smith regarding Priory's monthly operations reports

(Doc. Nos. 252-1–252-8).

Defendants argue that, because the documents in question were filed in the context of a discovery dispute and not a merits-based motion and because the public interest in the exhibits is much lower for that reason, they are not subject to the *Shane Group* standard but should be

evaluated under the "good cause" standard established by Federal Rule of Civil Procedure 26(c) for protective orders. (Doc. No. 254.) They argue that the lowered standard is particularly appropriate here because the exhibits filed by Plaintiffs were not relevant to the supplemental joint discovery dispute statement, which asked for an update on the relevance of recent document production to the parties' ongoing privilege dispute. (*Id.*) Defendants further argue that the exhibits include "confidential and commercially sensitive information" regarding "Priory's and Acadia's internal policies for records management and IT systems, internal financial reporting systems, and internal operational practices" and that courts have allowed similar documents to remain under seal in other cases. (*Id.*) Finally, they argue that Priory holds heightened privacy interests because it is not a party to this litigation.[2]

Plaintiffs reply that the *Shane Group* standard "is not relaxed in the context of discovery disputes" and should be applied to the exhibits. (Doc. No. 255.) They argue that Defendants' argument that sealing is appropriate because the documents contain "sensitive, non-public commercial information of Priory and Acadia" does not meet that high standard. (*Id.*)

Some district courts in the Sixth Circuit have found that, where documents are filed in the discovery context, they should be evaluated under the standard set by Federal Rule of Civil Procedure 26(c) for granting a protective order— "a standard which . . . is lower than the *Shane Group* framework courts use to determine whether to grant a sealing order." *Veritas Indep. Partners, LLC v. Ohio Nat'l Life Ins. Co.*, Case No. 1:18-cv-769, 2022 WL 2383542, at *3 (S.D. Ohio 2022); *see also In re Onglyza Saxagliptin & Kombiglyze Xr Saxagliptin & Metformin Prods.*

---

[2] The Court has largely rejected this argument in earlier discovery disputes between the parties, finding that "Acadia's sale of Priory was executed on January 7, 2021, more than two years after this action was filed and less than two weeks before the denial of Defendants' motion to dismiss." (Doc. No. 168.)

*Liab. Litig.*, No. 5:18-md-2809, 2019 WL 13098504, at *1–2 (E.D. Ky. Dec. 16, 2019) (applying the "good cause" standard used for protective orders in evaluating a request to seal material filed with a discovery-related motion)). This Court has addressed this issue in a similar context, finding that:

> The court in *Shane Grp.* distinguished between materials exchanged in discovery and those filed in the court record. *Shane Grp.*, 825 F.3d 305. The public has a presumptive interest in information filed in the court record as opposed to information exchanged between the parties. *Id.* The public interest stems from a variety of sources. Both the result of the litigation and the conduct giving rise to the litigation play a role. *Id.* In summarizing the interests of the public, the Sixth Circuit explained that "the public is entitled to assess for itself the merits of judicial decisions." *Id.*
>
> The motions before the Court seek to seal specific information arising in direct relation to discovery disputes. The briefing and documentation would not be in the court record but for the parties' discovery dispute. In contrast to the briefing on Plaintiff's motion to certify class, the Court finds that the public interest in the discovery dispute to be minimal and outweighed by the parties' interest in shielding from view specific information addressed by the parties' protective order. Accordingly, the Court finds that these motions to seal should be granted. The Court is granting these motions solely due to the stage of litigation in which they are presented and not for the content contained in the briefing and exhibits. Should the parties present this same information in other briefing, that the Court permitted filing under seal in this instance will not be grounds for filing it under seal elsewhere. The parties are expected to meet the standard for motions to seal articulated above.

*In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2021 WL 4391622, at *2 (M.D. Tenn. Sept. 24, 2021); *but see In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2021 WL 1110669, at *2 (M.D. Tenn. Mar. 23, 2021) (applying *Shane Group* standard to documents produced in support of motion to compel discovery production); *HLFIP Holdings, Inc. v. Rutherford Cnty., Tennessee*, No. 3:19-CV-00714, 2023 WL 6939227, at *2 (M.D. Tenn. Mar. 8, 2023) (same).

The Court will not resolve the general question of appropriate standard to be applied to motions to seal arising out of discovery disputes in this Order. Rather, the Court finds that

continued sealing of these exhibits—at least until further order—is largely appropriate because of the case-specific context in which they are provided. First, the parties' supplemental discovery dispute statement was provided at the Court's request and in the context of a larger and extensively litigated privilege dispute addressing the discovery-on-discovery Plaintiffs sought to support assertions of spoliation. The statement and its exhibits are thus twice removed from the merits of this case and tied directly to Defendants' assertions of attorney-client privilege that the Court ultimately upheld. Second, some of these documents have been the subject of the Court's prior orders regarding sealing. Specifically, Exhibit One was ordered unsealed by the parties' agreement (Doc. No. 175) and Exhibit Eight was ordered to remain provisionally sealed in the same order (*id.*). The parties have not addressed the Court's earlier decisions addressing the same documents. Finally, having reviewed earlier orders on motions to seal issued by the Magistrate Judge and Chief Judge Campbell, it appears that those orders have been inconsistently implemented and that documents ordered to be unsealed remain under seal in the Court's docket.

Given this confusion regarding the status of sealed documents in the record, including some of the exhibits addressed by this motion, and given the greater context of this motion in the litigation, the Court finds it appropriate for these exhibits to remain under seal pending the parties' comprehensive review of the filings that remain under seal in this matter.

## IV. Conclusion

For the foregoing reasons, and in consultation with Chief Judge Campbell, the parties are ORDERED to review the Court's prior orders on motions to seal and the documents they address to determine if those documents are appropriately sealed or unsealed in the Court's docket. The parties are ORDERED to file a joint statement notifying the Court of any docket entries that should be unsealed or sealed based on the Court's prior orders. For each identified document, the parties shall state: the docket number, a short description of the document, the party that advocates sealing,

and the order that addressed the document's status under seal. If the parties disagree about whether a prior order sealed or unsealed a particular document, they shall include their separate positions in the statement. The parties shall not use the statement as an opportunity to make renewed arguments to seal or unseal any document.

The parties are also ORDERED to identify any exhibit addressed by Plaintiffs' motion that has been the subject of a prior order regarding sealing. The parties shall identify the docket number of the earlier filing, the docket number of the order that addressed the exhibit, and whether the order required that the exhibit be sealed or unsealed.

The parties are ORDERED to file their joint statement by April 30, 2025.

Plaintiffs' motion to seal (Doc. No. 251) is GRANTED subject to review as appropriate considering the parties' anticipated joint statement.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge