# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

### NASHVILLE DIVISION

| | |
|---|---|
| ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) | Civil Action No. 3:18-cv-00988 CLASS ACTION |
| Plaintiff, ) | Chief District Judge William L. Campbell, Jr. Magistrate Judge Alistair E. Newbern |
| vs. ) ) | PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF |
| ACADIA HEALTHCARE COMPANY, INC., et al., ) ) ) | SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS AND |
| Defendants. ) ) ) | MEMORANDUM OF LAW IN SUPPORT THEREOF |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    THE TERMS OF THE SETTLEMENT.............................................................3

III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................6

     A.     Plaintiffs and Lead Counsel Have Adequately Represented the Class....................7

     B.     The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Negotiation Process ......................................................................................8

     C.     The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria....................9

         1.     The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Potential Appeals ....................................................................9

         2.     The Method of Distributing Relief Is Effective.........................................10

         3.     Attorneys' Fees and Expenses ................................................................11

         4.     Identification of Agreements ...................................................................12

         5.     Class Members Are Treated Equitably .....................................................12

         6.     The Judgment of Experienced Trial Counsel.............................................13

         7.     The Sixth Circuit's Public Interest Factor Is Satisfied.............................14

IV.   THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .........................................14

V.     PROPOSED SCHEDULE OF EVENTS.............................................................16

VI.   CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
    2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ................................................. 9

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) .............................................................................. 15

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) ............................................................................ 14

*Grae v. Corr. Corp. of Am.*,
    2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) .................................................. 11

*Hyland v. HomeServices of Am., Inc.*,
    2012 WL 122608 (W.D. Ky. Jan. 17, 2012) ........................................................ 8

*In re Genworth Fin. Sec. Litig.*,
    2016 WL 7187290 (E.D. Va. Sep. 26, 2016) ...................................................... 12

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) .................................................. 11

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2014 WL 2946459 (E.D. Tenn. June 30, 2014) .................................................. 11

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................ 7

*Int'l Union, United Auto., Aerospace, & Agric.*
    *Implement Workers of Am. v. Gen. Motors Co.*,
    497 F.3d 615 (6th Cir. 2007) .............................................................................. 14

*Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*,
    No. 3:18-cv-01368, ECF 267 (M.D. Tenn. Oct. 7, 2022) ................................... 11

*Kizer v. Summitt Partners, L.P.*,
    2012 WL 1598066 (E.D. Tenn. May 7, 2012) .................................................... 15

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ............................................................................ 12

*Motter v. O'Brien*,
    2014 WL 12892732 (S.D. Ohio June 12, 2014) ............................................. 7, 14

4925-4854-1306.v1

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016),
   *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
   2017 WL 6398014 (6th Cir. Nov. 27, 2017)...................................................................11

*Rudi v. Wexner*,
   2022 WL 1682297 (S.D. Ohio May 16, 2022) ....................................................................13

*Shy v. Navistar Int'l Corp.*,
   2022 WL 2125574 (S.D. Ohio June 13, 2022) ...................................................................13

*Williams v. Vukuvich*,
   720 F.2d 909 (6th Cir. 1983) ...........................................................................................13, 15

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
   §78u-4(a)(4) ................................................................................................................1, 3, 4, 12
   §78u-4(a)(7) ............................................................................................................................15

Federal Rules of Civil Procedure
   Rule 23 .....................................................................................................................................3
   Rule 23(a)(2) ............................................................................................................................3
   Rule 23(c)(2) ..........................................................................................................................15
   Rule 23(e)............................................................................................................................7, 14
   Rule 23(e)(1) .......................................................................................................................3, 6
   Rule 23(e)(1)(B)...........................................................................................................6, 14, 15
   Rule 23(e)(2) .......................................................................................................................2, 6
   Rule 23(e)(2)(A) ......................................................................................................................7
   Rule 23(e)(2)(C) ......................................................................................................................9
   Rule 23(e)(2)(C)(i) ..................................................................................................................9
   Rule 23(e)(2)(C)(ii) ...............................................................................................................10
   Rule 23(e)(2)(C)(iii) ..............................................................................................................11
   Rule 23(e)(2)(C)(iv) ..............................................................................................................12
   Rule 23(e)(2)(D) ....................................................................................................................13
   Rule 23(e)(3) ............................................................................................................................6
   Rule 23(e)(4) ..........................................................................................................................12

4925-4854-1306.v1

Chicago & Vicinity Laborers' District Council Pension Fund and the New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement reached in this Litigation ("Settlement").[1] The proposed Settlement provides an outstanding recovery of $179,000,000 in cash to resolve this securities class action against all Defendants. The Settlement is memorialized in the Stipulation. Counsel for Plaintiffs has met and conferred with counsel for the Defendants, and the Defendants do not oppose the relief requested herein.

By this motion, Plaintiffs seek entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of giving notice of the proposed Settlement to the Class; and (3) setting a hearing date for the Court to consider final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for awards pursuant to 15 U.S.C. §78u-4(a)(4) reflecting their time and expenses (the "Settlement Hearing"), and a schedule for various deadlines relevant thereto ("Preliminary Approval Order"). As shown below, the Settlement is an exceptional result for the Class; is fair, reasonable, and adequate under the governing standards in this Circuit; and warrants preliminary and ultimately final approval by this Court.

I.     INTRODUCTION

As set forth in the Stipulation, the Settlement provides for the payment of $179 million in cash to resolve this securities class action against all Defendants. This is an excellent recovery for the Class and was reached by experienced counsel following more than seven years of vigorous

---

[1]     Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement dated November 24, 2025 ("Stipulation"), filed concurrently herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

litigation and arm's-length mediations overseen by the Honorable Layn R. Phillips of Phillips ADR Enterprises, a highly respected and experienced mediator and retired federal district court judge. The proposed Settlement satisfies Rule 23(e)(2) of the Federal Rules of Civil Procedure and the Sixth Circuit's standards for settlement approval. The Settlement is fair, reasonable, and adequate as it provides for the all-cash recovery without the risks of further litigation.

Plaintiffs and Lead Counsel approve of the Settlement. Plaintiffs are sophisticated institutional investors with experience overseeing securities fraud litigation. Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has substantial securities litigation experience in this District and around the country and has litigated hundreds of cases to resolution; its attorneys are recognized as leading experts in the field. Plaintiffs retained Robbins Geller specifically because of its experience and acumen in large complex securities matters like this one, as well as its experience in this Court.

Plaintiffs and Lead Counsel understood there were serious risks in continued litigation. Although Plaintiffs believe very strongly in the merits of this case, Defendants believe very strongly in their defenses. At trial, Plaintiffs would have had the burden of proving each of the elements of their claims, while Defendants would only need to defeat one to prevail. Continuing to litigate through trial and litigating numerous unresolved motions, including Defendants' motion to certify the Court's summary judgment order for immediate appeal pursuant to 28 U.S.C. §1292 and for a stay of this years-old litigation, and any resulting appeals would have been very expensive, would have dragged on for years, and would have raised substantial risks of either a reduced recovery or no recovery at all. Considering the recovery provided for the Class in this Settlement against the risks incurred in continuing to prosecute the case through trial and/or lengthy appeals, the Settlement at this juncture, just days before trial, is an excellent recovery in the Class' best interests.

- 2 -

At this stage, the Court need only determine that it will "likely" be able to approve the proposal under Rule 23(a)(2) (*see* Fed. R. Civ. P. 23(e)(1)) such that the Class should be notified of the proposed Settlement. In light of the substantial recovery obtained and the risks and expenses posed by a trial of this case, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, which will, among other things:

- preliminarily approve the Settlement on the terms set forth in the Stipulation;

- approve the form and content of the Notice, Proof of Claim and Release, Summary Notice, and Postcard Notice, attached as Exhibits 1 through 4 to the Preliminary Approval Order;

- find that the procedures for distribution of the Notice and Postcard Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

- set a schedule and procedures for: disseminating the Postcard Notice and Notice, publication of the Summary Notice; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses, including awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4); submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II. THE TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves, fully, finally and with prejudice, the claims against Defendants of a class of all Persons who, between April 30, 2014, and November 15, 2018, inclusive, purchased or otherwise acquired Acadia Healthcare, Inc. ("Acadia") common stock. Excluded from the Class by definition are Defendants, members of their immediate families, any entity of which a Defendant has a controlling interest, and the legal representatives, heirs, predecessors, successors, or assigns of any excluded party.

Pursuant to the proposed Settlement, Defendants shall pay, or cause to be paid, $179 million ("Settlement Amount"), which will be deposited into an interest-bearing escrow account ("Escrow

Account") immediately upon execution of the Stipulation. Stipulation, ¶2.2. Interest on the Settlement Amount will accrue for the benefit of the Class and is referred to herein as the Settlement Fund. *Id.* Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stipulation, ¶2.12. Plaintiffs propose that a nationally recognized class action settlement administrator, Verita Global ("Verita"), be appointed here to oversee notice and administration. The proposed notice plan and plan for claims processing is discussed below in §IV.

Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses shall be paid out of the Settlement Fund.

Plaintiffs intend to request an amount not to exceed $65,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. Any such amounts the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees of no more than one third of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation not to exceed $5,500,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses.

Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount ("Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a

- 4 -

distribution of at least $10.00.  The Plan of Allocation treats Class Members equitably and accounts for the strengths of their particular claims.

The Settling Parties have negotiated a Supplemental Agreement providing Defendants the right to terminate the Settlement based on certain conditions if the Court provides a renewed opt out opportunity.  Stipulation, ¶7.4.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants arising out of, or in connection with both: (i) the purchase or acquisition of Acadia common stock during the Class Period; and (ii) the allegations, acts, facts, matters, occurrences, disclosures, filings, representations, statements, or omissions that were or could have been alleged in the Litigation.  Stipulation, ¶1.25.

The Notice of Proposed Settlement of Class Action ("Notice") explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim") pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; and that there will be no reversion to Defendants once the Settlement becomes effective.  The Notice also informs Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses; and (ii) the date, time, and location of the Settlement Hearing.

If the Court grants preliminary approval, the Claims Administrator will email or mail (where an email address is unavailable) the Postcard Notice (Exhibit 4 to the Preliminary Approval Order) to Class Members who can be identified with reasonable effort.  After entry of the Preliminary Approval Order, the Claims Administrator will cause the Notice and Proof of Claim to be posted on the Settlement-designated website.  Additionally, the Claims Administrator will cause the Summary

- 5 -

Notice (Exhibit 3 to the Preliminary Approval Order) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.

## III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides:

> (2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:
> >
> > > (i)   the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, "[w]hen determining whether the proposed settlement is fair[,] adequate, and reasonable," courts in the Sixth Circuit take into account the following factors (several of which overlap with Rule 23(e)(2)):

> (1)   the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the judgment of experienced trial counsel;

(5)     the nature of the negotiations;

(6)     the objections raised by the class members; and

(7)     the public interest.

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001).

The proposed $179 million cash Settlement easily satisfies Rule 23(e), as well as the Sixth Circuit's factors, which are addressed below (some together, to the extent they overlap). While Plaintiffs and their counsel believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked simply to permit notice of the terms of the Settlement to be provided to the Class and to schedule a settlement hearing, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to consider any expressed views by Class Members of the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of fees and expenses, including Plaintiffs' request for an award of their time and expenses incurred in representing the Class. Fed. R. Civ. P. 23(e); *Motter v. O'Brien*, 2014 WL 12892732, at *1 (S.D. Ohio June 12, 2014).

**A.      Plaintiffs and Lead Counsel Have Adequately Represented the Class**

From the outset of this case, Plaintiffs and their counsel have adequately represented the Class, satisfying Rule 23(e)(2)(A) (the class representatives and class counsel adequately represented the class), as well as the Sixth Circuit's closely related third factor (the stage of proceedings and the amount of discovery completed), by diligently prosecuting this Litigation on their behalf.

Plaintiffs were appointed Lead Plaintiffs by the Court on January 9, 2019. *See* ECF 35. After their appointment, Plaintiffs and their counsel, among other things: drafted the operative

complaint; opposed Defendants' motion to dismiss; secured class certification; defeated Defendants' Rule 23(f) petition to the Sixth Circuit; produced documents responsive to Defendants' document requests and sat for a deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; issued subpoenas to numerous nonparties pursuant to Rule 45 of the Federal Rules of Civil Procedure; reviewed and analyzed over 2 million pages of documents produced by Defendants, and numerous third parties; briefed and argued numerous discovery disputes; took over 40 fact and expert depositions; opposed Defendants' motion for summary judgment; obtained partial summary judgment on the issue of reliance; engaged in extensive trial preparations and briefing related thereto; and engaged in protracted settlement negotiations with the assistance of the Honorable Layn Phillips, a retired federal judge. Plaintiffs' and Lead Counsel's efforts resulted in this Settlement of $179 million, which will provide a significant recovery to the Class.

### B. The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Negotiation Process

The negotiations were at arm's length and well informed by, among other things, extensive investigation and litigation by Lead Counsel, including: (i) analysis of publicly available information about Defendants; (ii) contentious and lengthy motion practice seeking dismissal of the claims; (iii) protracted motion practice to certify the Class, including motion practice before the Sixth Circuit Court of Appeals; (iv) extensive motion practice at summary judgment; (v) review and analysis of more than 2 million pages of documents produced by Defendants and third parties in response to Plaintiffs' discovery requests and subpoenas; and (vi) deposing more than 40 fact and expert witnesses. As a result, Plaintiffs and Lead Counsel were knowledgeable of the strengths and weaknesses of their case. *See Hyland v. HomeServices of Am., Inc.*, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (when determining whether preliminary approval is appropriate, courts should evaluate whether the settlement "'appears to be the product of serious, informed, non-collusive

negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval'").

Moreover, the Settlement was achieved only after the Plaintiffs and Defendants participated in settlement negotiations while simultaneously preparing the case for trial. The Parties attended an in-person mediation on November 16, 2023 with Judge Phillips. Prior to the mediation, Lead Counsel and Defendants' Counsel exchanged mediation briefs and presented their arguments on the case's merits and defenses. Negotiations, which at all times were adversarial, were unsuccessful at the mediation. Thereafter, the Parties vigorously litigated for the next two years through discovery, summary judgment, and trial preparation. As the Parties neared trial, Judge Phillips issued a mediator's proposal to resolve this action for $179 million. Thus, here, the fact that experienced and sophisticated counsel, well aware of the other side's legal position, engaged in arm's-length settlement negotiations facilitated by an experienced mediator, weighs in favor of finding the Settlement fair. *Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *5 (E.D. Mich. Dec. 27, 2013).

C.    The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

1.    The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Potential Appeals

The proposed Settlement satisfies the Rule 23(e)(2)(C)(i) adequacy standard, taking into account the costs, risks, and delay of trial and appeal, which also covers the Sixth Circuit's overlapping second factor (the complexity, expense, and likely duration of the litigation). The Settlement also satisfies the Sixth Circuit's first factor (plaintiff's likelihood of ultimate success on the merits balanced against the settlement amount) because it provides an immediate and substantial benefit for the Class of $179 million. Indeed, the Settlement represents the second largest securities recovery in this District.

- 9 -

Given the complexities of this Litigation, the many issues in contention, the amount in controversy, and the substantial risks of continued litigation through the upcoming trial, Lead Counsel believes the Settlement represents a favorable resolution of this Litigation. Importantly, the Settlement eliminates the risk that Plaintiffs and the Class might recover nothing, or might not recover as much as obtained in the Settlement, if the Litigation were to continue. While Plaintiffs are confident in the strength of the case, they are aware of the many defenses available to Defendants and the inherent risks and delay of continued litigation through trial and appeals.

For example, at the time the Settlement was reached, several pretrial motions and Defendants' motion to certify the Court's summary judgment order for immediate appeal pursuant to 28 U.S.C. §1292 and for a stay remained pending. The parties also continued to contest critical issues related to jury instructions and verdict forms. Although Plaintiffs believed they could prevail at trial despite the risks, a positive result was far from assured.

## 2. The Method of Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process also satisfies Rule 23(e)(2)(C)(ii).

The notice plan is discussed below in §IV and includes e-mail or direct-mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and over a national newswire service. Verita will use time-tested methods to ensure that Class Members who held Acadia common stock in their own names, as well as those who held Acadia common stock in street name, will receive a Postcard Notice. Verita will contact brokerages, custodial banks, and other institutions ("Nominee Holders") that hold securities as nominees in street name for the benefit of their customers who are the beneficial owners of the securities. Based on experience locating class members who hold securities in street name, Verita has developed a propriety database of Nominee Holders to whom it

- 10 -

will send a Postcard Notice and cover letter. Verita will also update the case-specific website (www.AcadiaHealthcareSecuritiesLitigation.com) and post important documents regarding the Settlement, including the Stipulation, Preliminary Approval Order, Notice, Proof of Claim, and all briefs and declarations in support of approval of the Settlement, and provide a toll-free number that Class Members can call to make inquiries about the Settlement. Similar notice programs have regularly been found to satisfy due process. *See N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (finding similar notice program "satisfied Rule 23's notice requirement"), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

### 3. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the attorneys' fees award Lead Counsel intends to seek. As discussed above in §II, Lead Counsel intends to request attorneys' fees of no more than one third of the Settlement Amount and expenses in an amount not to exceed $5,500,000, plus interest on both amounts. This attorneys' fees request is consistent with fee requests approved by courts in this District and the Sixth Circuit. *See, e.g., Jackson Cnty. Emps.' Ret. Sys. v. Ghosn, et al.*, No. 3:18-cv-01368, ECF 267, ¶3 (M.D. Tenn. Oct. 7, 2022) ("The Court finds that the amount of fees awarded [one-third of the settlement amount] is fair and reasonable under the 'percentage-of-recovery' method . . . and that the awarded fee is in accord with Sixth Circuit precedent.") (attached as Ex. 1 hereto); *Grae v. Corr. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) ("The Court finds that the amount of fees awarded [one-third of the settlement amount] is fair and reasonable under the 'percentage-of-recovery' method . . . and that the awarded fee is in accord with Sixth Circuit precedent."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In*

- 11 -

*re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund . . . . [T]he percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."). In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sep. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to [Class] Counsel immediately upon entry of this [o]rder").

Further, Plaintiffs intend to request an amount not to exceed $65,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

### 4. Identification of Agreements

Rule 23(e)(2)(C)(iv) requires that the parties identify any agreements between them. Plaintiffs and Defendants have negotiated a standard supplemental agreement providing that, if the Court provides a renewed opportunity to opt out, and opt outs from the Class equal or exceed a certain threshold, then Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.4. Notice of the pendency of this Litigation has recently been provided to the Class, and Class Members have had the opportunity to request exclusion. Only one Person did so, but indicated that they made no purchases of Acadia common stock during the Class Period. No additional opportunity to opt out is required (*see* Fed. R. Civ. P. 23 (e)(4)), and the Parties do not believe that providing a second opportunity to opt out of the Class is warranted. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018).

### 5. Class Members Are Treated Equitably

As reflected in the Plan of Allocation, the Settlement treats Class Members equitably relative to each other while taking into account the timing of their purchase or acquisition of Acadia common stock, and their subsequent disposition, if any, and provides that each Authorized Claimant shall

- 12 -

receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation. Accordingly, Rule 23(e)(2)(D) is satisfied.

### 6. The Judgment of Experienced Trial Counsel

The Sixth Circuit's fourth factor (judgment of experienced counsel) is also satisfied. Lead Counsel has carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence pertaining to the claims asserted against Defendants and the defenses they raised; the likelihood of prevailing on the claims; and the risk, expense, and duration of continued litigation, including any appeals, and have concluded that the Settlement is fair, reasonable, and in the best interests of the Class.

Significant weight should be attributed to experienced counsel's evaluation and conclusion that a settlement is in the best interests of the class. *See Williams v. Vukuvich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that courts should defer judgment of experienced counsel who have evaluated the strength of plaintiff's case); *Shy v. Navistar Int'l Corp.*, 2022 WL 2125574, at *6 (S.D. Ohio June 13, 2022) ("Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair."); *Rudi v. Wexner*, 2022 WL 1682297, at *4 (S.D. Ohio May 16, 2022) ("The Court gives significant weight to the opinions of Settling Shareholders' counsel, who have indicated that the Settlement is fair, reasonable, and adequate."). Here, Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action recoveries throughout the country, including in this District and within the Sixth Circuit. *See* www.rgrdlaw.com. Given the experience possessed by Lead Counsel, weight should be given to its determination that, taking into account the strength of the claims alongside the time, expense, complexity of the issues, and uncertainty of trial and any appeals, the Settlement set forth in the Stipulation is an excellent result that confers substantial, immediate benefits on the Class.

- 13 -

### 7. The Sixth Circuit's Public Interest Factor Is Satisfied

As a matter of public policy, settlement is a strongly favored method for resolving disputes, particularly in complex class actions such as this. *See, e.g., Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Co.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting the "federal policy favoring settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) ("[T]he law generally favors and encourages the settlement of class actions."); *Motter*, 2014 WL 12892732, at *1 ("The Court further recognizes that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The fairness and adequacy of the $179 million recovery are clear. Given the litigation risks involved, it is a fair result for the Class. It could not have been achieved without the full commitment of Plaintiffs and their counsel. Plaintiffs and Lead Counsel respectfully submit that the Settlement is both fair and adequate such that notice of the Settlement should be provided to the Class.

## IV. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be settled without the approval of the court, and notice of the proposed settlement shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e). In addition, the Rule provides: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Preliminary Approval Order will require the Claims Administrator to: (i) notify Class Members of the Settlement by emailing or mailing (where an email address is unavailable) the Postcard Notice to all Class Members who can be identified with reasonable effort; (ii) cause a copy

of the Summary Notice to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service; and (iii) cause the Notice and Proof of Claim, among other documents, to be posted on the case-specific website. The proposed method of giving notice to Class Members is appropriate because it is calculated to reach Class Members who can be identified with reasonable effort. *Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (notice scheme sufficient because it was "'reasonably calculated to reach interested parties'"); *Williams*, 720 F.2d at 921 (plaintiff class must receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort); *Kizer v. Summitt Partners, L.P.*, 2012 WL 1598066, at *9 (E.D. Tenn. May 7, 2012) (sufficient notice where mailings were made to last known addresses of class members); Fed. R. Civ. P. 23(e)(1)(B) (courts "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]").

As required by Rule 23(c)(2) of the Federal Rules of Civil Procedure and the PSLRA (15 U.S.C. §78u-4(a)(7)), the Notice describes in plain English the nature of the Litigation; sets forth the definition of the Class; and states the Class' claims. In addition, the Notice describes the Settlement; the Settlement Amount, both in the aggregate and on an average per-share distribution basis; explains the Plan of Allocation; sets out the amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis and the amount sought by Plaintiffs for their time and expenses; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing and the procedures for appearing at the hearing and objecting to the Settlement. Lead Counsel believes that the Notice,

- 15 -

along with the Summary Notice and Postcard Notice, will fairly apprise Class Members of their rights with respect to the Settlement, that it is the best notice practicable under the circumstances, and that it should be approved.

## V.      PROPOSED SCHEDULE OF EVENTS

The Settling Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval Order:

| Event | Deadline |
|---|---|
| Deadline for emailing or mailing the Postcard Notice to Class Members and posting the Notice and Proof of Claim on the Settlement website (the "Notice Date") | No later than 15 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | No later than 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | No later than 35 calendar days prior to the Settlement Hearing |
| Deadline for filing objections | No later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | No later than 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Proofs of Claim | No later than 90 calendar days after the Notice Date |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

- 16 -

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  November 24, 2025            Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JERRY E. MARTIN, #20193
CHRISTOPHER M. WOOD, #032977


      s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
jmartin@rgrdlaw.com
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SAM S. SHELDON (admitted *pro hac vice*)
DARRYL J. ALVARADO (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
TING H. LIU (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
dalvarado@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
afolkerth@rgrdlaw.com

Class Counsel

- 17 -

DOWD, BLOCH, BENNETT, CERVONE,
   AUERBACH & YOKICH LLP
JUSTIN J. LANNOYE
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
Telephone:  312/372-1361
312/372-6599 (fax)
jlannoye@laboradvocates.com

Counsel for Chicago & Vicinity Laborers' District
Council Pension Fund

PITTA LLP
MICHAEL BAUMAN
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)
mbauman@pittalaw.com

Counsel for New York Hotel Trades Council & Hotel
Association of New York City, Inc. Pension Fund

- 18 -